## JACOB HYMAN et al., Appellant, *v.* J. W. KELLY et al., Respondents.

Inadequacy of property to satisfy lien, and insolvency of mortgagor usually held in Courts of equity, as sufficient reasons for appointing a receiver.

A specific pledge of rents and profits, to keep down interest, which were afterwards diverted, furnished an additional reason for granting the appointment of a receiver.

Other circumstances enumerated which ought properly to induce the appointment of a receiver.

An agreement describing sufficiently the parties thereto, the property to be affected thereby, and providing that one party shall *in praesenti* enter into possession of the property described, and hold it until a certain debt is paid out of the rents and profits of the property, is not void for uncertainty.

A seal imports consideration. There is nothing in the instrument under consideration contradicting that presumption arising from the seal.

Instrument under consideration conveyed to Myers a subsisting present right to hold and enjoy the property described, as trustee for others.

If a trustee turns over the trust property to the custody of one who neglects to care for it properly, a Court of equity will interfere to protect the property from waste.

Under the English law a mortgagee might simultaneously commence three proceedings to collect his debt or enforce his lien—an action of debt, an action of ejectment and a bill to foreclose.

Our statute confines the mortgagee to the pursuit of one remedy only. The action of ejectment is entirely forbidden. Nor can the action of debt be resorted to unless the mortgage lien be entirely abandoned. The remedy against the property is confined to the remedy of foreclosure and sale.

Our statute does not deprive the mortgagee of any portion of the relief which is usually granted in foreclosure suits where the sale of the property is sought.

Receivers will be appointed in foreclosure suits where it is necessary to prevent fraud, injustice or loss of security.

APPEAL from the District Court of the First Judicial District of the State of Nevada, Storey County, Hon. RICHARD RISING presiding.

The facts of the case are stated in the opinion of the Court.

*Quint & Hardy,* of counsel for Appellants.

*Taylor & Campbell,* for Respondents.

Points of Appellants.

There are two reasons why the Court should have appointed a receiver.

*First*—To collect the rents.

*Second*—To make repairs and prevent waste.

The purchaser at Sheriff's sale is entitled to the rents and profits. A bill in equity in such case as this, is the only proper method of enforcing his rights. (See *Harris* v. *Reynolds,* 13 Cal. 514; see also *McDevitt* v. *Sullivan,* 8 Cal. 592; *Bank of Ogdensburg* v. *Arnold,* 5 Paige Ch. 3; *Howell* v. *Ripley,* 10 Paige Ch. 43; *Astor* v. *Turner & Skidmore,* 11 Paige, 436.) A receiver should be appointed to repair the premises. Waste is either voluntary or permissive. (Burrell's Law Dictionary, part 1, p. 1061; 3 Black. Com. 223; 2 Id. 281.) Here was permissive waste.

Points and authorities of Respondent:

Under our law the mortgagee acquires no legal estate, nor right of possession by virtue of the mortgage. (4 Kent, 157,

159; *Runyan* v. *Merceraus*, 11 John. 534; *Jackson* v. *Willard*, 4 John. 41; *Godeffroy* v. *Caldwell*, 2 Cal. 492; *Johnson* v. *Sherman*, 15 Cal. 293.) The mortgagor may exercise the rights of an owner, provided *he* does nothing to *impair* the security. (4 Kent, 161.)

A mortgagee out of possession is not entitled to rents and profits before a foreclosure and sale, but the Court may restrain waste. (Statutes 1861, p. 355, secs. 235, 236.)·

The mortgagee has no right to a receiver. (*Guy* v. *Ide*, 6 Cal. 101.) The mortgagor has a right to the possession until the execution of the Sheriff's deed. (*Sands* v. *Pfeiffer*, 10 Cal. 265; *Guy* v. *Middleton*, 5 Cal. 392.)

Plaintiff has a right to the rents between the time of purchase and the expiration of six months, but his remedy is an action of debt. He has no right to possession of the property. The statute guarantees the possession to defendant during the six months, with right to use it as it was used previously. There is no allegation they are using it differently. There is no allegation that defendants deny plaintiffs the right to enter to make repairs. This is not a bill to restrain waste. There is no allegation that the property is worth less now than when the mortgage was executed. The paper signed by respondents and Myers cuts no figure in this case. If a contract, it is void for want of consideration, and if valid, it has not been assigned to plaintiffs. If a lease, it is void for uncertainty. If a power of attorney, there is no right to substitute plaintiffs, and no attempt to do so.

Opinion by BEATTY, J., LEWIS, C. J., concurring.

In June, 1863, J. W. Kelly, being the owner of certain city property in Virginia, Storey County, he and Bridget Kelly executed a mortgage thereon to John Kelly. In August, 1863, they executed a second mortgage on the same property to H. Myers and Israel Solomon. In September, 1863, J. W. Kelly entered into a written contract under seal with Myers, one of the second mortgagees, by the provisions of which Myers was to enter into possession of the mortgaged premises, lease them and collect the rents, and apply them as provided

for under the contract. Among other applications of the rent, one was to keep down the interest on the mortgage in favor of Myers and Solomon. It also provides for payment of insurance, improvements on the property, etc., and further provides that the possession of Myers shall continue until the payment, not only of the mortgage to himself and Solomon, but also of the Kelly mortgage, which is recited to have been assigned to them. Myers entered into possession under this contract, and for a time collected the rents and applied the proceeds in accordance with the provisions of the contract. He then assigned his interest in both debts to Hymen & Lichtenstein. After the assignment, Myers ceased to collect the rents or have any control over the property. The present plaintiffs took his position in that respect for a while, and then J. W. and Bridget Kelly induced the tenants who had been put in possession by Myers and the present plaintiffs, to surrender the possession to them, and since that time no rents or profits have been applied to keeping down the interest on the second mortgage, or indeed either of the mortgages. The Kellys have received the rents and profits, failed to pay the taxes, neglected to keep the building in repair, and one of them even threatened to destroy them if deprived of the possession.

Plaintiffs filed their bill of foreclosure, obtained a judgment, and had the property sold. They bid it in at Sheriff's sale for less than the amount of their debt, but for considerably more than its real value.

The Kellys and their tenants are utterly insolvent and irresponsible. The house is going to waste and becoming untenantable for want of repairs. Such are the facts of this case as charged in the bill filed, and upon this state of facts the plaintiffs ask for a receiver to be appointed to collect the rents, preserve the property, etc., during the six months which intervenes between the sale and the time when the purchaser is entitled to his deed and possession of the premises bought. Defendants demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The Court sustained the demurrer and dismissed the bill.

The demurrer of course confesses the truth of the allegations

in the bill, and the question for us to decide is whether the Court erred in sustaining this demurrer and dismissing the bill.

We will first examine what was the equity rule as it formerly existed in the English and American Courts, and next we will see what changes, if any, have been made in this rule by our code of procedure.

Courts of equity, upon the filing of a bill to foreclose a mortgage, have usually appointed a receiver where there was an allegation that the property mortgaged was insufficient to pay the mortgage debt, and the mortgagor was insolvent. If in addition to this it appears there was a specific pledge of the rents and profits, to keep down the interest, and they were being diverted, it always furnished a strong additional reason for the appointment of a receiver.

In this case many equitable circumstances exist which would bring it within the rules established by Courts of equity for granting receivers.

*First*—The property is entirely inadequate to pay the debt.

*Second*—The mortgagors are insolvent.

*Third*—There was not only a contract that the rents should repair the building and keep down the interest, but Myers was actually put in possession of the property and rents and profits, and for a time they were so applied.

*Fourth*—The defendants, by a fraudulent collusion with the tenants put in possession by Myers or the plaintiffs, effected a change in the condition of the property and diverted the rents from their legitimate channel.

*Fifth*—The defendants are guilty of permissive waste.

*Sixth*—One of them is threatening to destroy the property.

It appears to us the existence of these facts would be sufficient, according to the established practice in all Courts of equity to induce the Court to appoint a receiver. Even if one-half of the facts here alleged were true it would seem to us sufficient to justify a Court of equity in granting the relief sought.

For the rules governing Courts of equity in the appointment of receivers, we would refer to Daniels' Chancery Practice, pp. 1950 to 1958; also *Bank of Ogdensburg* v. *Arnold,* 5 Paige, 38; *Howell* v. *Ripley,* 10 Paige, 43; *Astory* v. *Tur-*

*ner & Skedmore*, 11 Paige, 436; *Lofsky* v. *Mauger*, 3 Sanford's Chancery Reports, 71.

Respondents contend that the contract with Myers cannot be relied on to aid the plaintiff's case for several reasons, which we will presently notice. We might say that plaintiffs make a case sufficiently strong for equitable interference without that instrument, but we take a different view of the matter.

Counsel say of this instrument, "if intended as a lease it is void for uncertainty." We cannot see any such uncertainty about it.

We know not in what particular counsel considers it uncertain.

The parties to the lease and the property seem sufficiently certain; it purports to commence *in presenti* and to continue until the extinguishment of the debts secured by mortgage.

It might be somewhat problematical if the rents in this case ever would extinguish the mortgages, but that is no such uncertainty as would invalidate a lease or grant.

"If a contract, it was void for want of consideration," say counsel for respondents. The seal certainly imports consideration. There is nothing in the case that contradicts the legal presumption of consideration arising from the character of the instrument.

That instrument, in our opinion, did convey to Myers a present subsisting interest in, and right to possess and control the property described. But that possession was a right not to be enjoyed for his own benefit, but he stood in the light of a trustee to rent out the premises for the mutual advantage and benefit of the mortgagors and mortgagees, and account for the rents and profits as specified in the agreement. If Myers neglected his duty as trustee and turned over the property to the care of others, who were not managing it properly, no doubt on application to a Court of Chancery by the present defendants the Court would have appointed a receiver to manage the property and collect the rents; but no default of Myers could justify the course pursued by defendants.

• The next question to be considered is, has our Practice Act altered or curtailed the power of equity Courts in granting

relief in foreclosure suits. To settle this point properly it may be necessary to recur to the former practice of Courts of law and equity in mortgage cases.

At common law it has always been held that the title of the estate vested in the mortgagee upon the execution of the mortgage and on the failure to pay the debt at maturity, the mortgagee might at the very same moment commence an action of ejectment for possession of the land, an action of debt or assumpsit for the debt, and file a bill in equity to foreclose the right of redemption.

Our Practice Act contains only two sections which, in our opinion, bear on this point. These are sections 246 and 260, which read as follows:

" Section 246. There shall be but one action for the recovery of debt, or the enforcement of any right secured by mortgage, or lien upon real estate, or personal property, which shall be for an enforcement of said lien or mortgage, in accordance with the provisions of this chapter. In such action the Court shall have power before judgment, or decree to direct a sale of the incumbered property, or such part thereof as shall be necessary, and the application of the proceeds to the payment of the costs and expenses of the sale, the costs of the suit, and the amount due to the plaintiff. If it shall appear from the Sheriff's returns that there is a deficiency of such proceeds and a balance still due to the plaintiff, the judgment shall be docketed for such balance, and shall, from the time of such docketing, be a lien upon the real estate of the judgment debtor, and an execution may be issued by the Clerk of the Court as on other judgments against the property of the judgment debtor, to collect such balance or deficiency.

" Sec. 260. A mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property, without a foreclosure and sale."

The only construction we can put on these two sections is that the mortgagee shall pursue but one remedy, not two or three remedies at the same time for the enforcement of his rights. And that remedy shall in no case be the action of

ejectment to obtain the possession of the land. But the remedy shall be the equitable one of foreclosure and sale, if the mortgage is relied on. Perhaps, if the mortgagee chooses to abandon all claim under the mortgage, he may bring the ordinary suit for the collection of a debt. But supposing the remedy to be sought not only against the debtor but against the property mortgaged, it is strictly confined to that remedy in equity which is called (perhaps rather inaccurately) a fore-closure and sale. In England, and perhaps in some of the older States of this Union, there was a common practice of filing a bill praying the Court to compel the mortgagor to redeem or to yield up and relinquish his right of redemption. In such case the form of the decree is that the mortgagor redeem by paying the amount due to the mortgagee by a day certain, or he will be forever barred of his right of redemption. This is what may be termed a strict technical foreclosure. Then in reality the mortgagee had three distinct remedies when he wished to reach the mortgaged property.

*First*—Ejectment at law.

*Second*—Strict technical foreclosure in equity.

*Third*—The equitable remedy of foreclosure and sale.

Our statute clearly restricts the mortgagee to the last named remedy. But in restricting him to this remedy, does it deprive him of any portion of the relief which is usually granted by Courts of equity where this remedy is sought? If it does, we are unable to see how or why it is done. We are aware that the Supreme Court of California, in the case of *Grey* v. *Ide*, held that under a statute precisely like ours, it was not a proper practice to appoint receivers pending a foreclosure suit.

The learned Judge who rendered the opinion in that case says : " Our statute forbids a mortgagee from recovering the mortgaged estate, and confines his remedy to a foreclosure. The same reason does not, therefore, exist, as by the English rule for appointing a receiver to collect the rents and profits pending the litigation." This reasoning is, to our minds, incomprehensible. The argument is : " Our law having forbid the mortgagee to bring ejectment for the property mortgaged, it therefore becomes the duty of equity Courts to deny him all security to be derived from the rents and profits, and

all opportunity of protecting the property during litigation." If it be taken for granted that it was the object of our Legislature in framing this part of the Practice Act, to discourage mortgages, and to render such securities uncertain and comparatively valueless, then we could understand this reasoning. But if the intention was merely to simplify proceedings in Courts of justice and prevent multiplicity of suits, then we cannot understand or appreciate the force of this argument.

The Legislature having forbid the mortgagee pursuing the common law remedy of ejectment, would, it appears to us, be rather a reason for a more liberal exercise of the Chancellor's powers to protect the security he has for his debt.

Whilst perhaps the English practice of appointing a receiver, almost as a matter of course, when a bill is filed by the first mortgagee, would not have a good practicable operation in our country, owing to the great cost attending such appointments, and the miserable mismanagement of estates generally by such appointees, still we think there are many cases where such an appointment is necessary to [prevent fraud and injustice and loss of security.

If the principle be once established that Courts will not, in foreclosure suits, appoint receivers, all a fraudulent mortgagor has to do to keep possession of property for months after it ought to be sold to pay the debt, is to make a conveyance to some non-resident who cannot be served with process for months.    In the mean time he can use up and destroy the improvements and render the security valueless.

In this case the demurrer should have been overruled.

The relief sought in the bill should be granted, unless the defendants can show a state of facts far different from those stated in the complaint.

The judgment of the Court below is reversed.    That Court will enter an order overruling the demurrer interposed by the defendants, and take such further proceedings as the equity of the case may require, not inconsistent with this opinion.

Opinion by Brosnan, J.

I concur in the judgment of reversal, owing to the manifest equities in this particular case; and especially for the reason

that the rents of the mortgaged premises were by express contract pledged to the payment *pro tanto* of the mortgage debt even before it became due and payable.

But from so much of the opinion as holds that a receiver may properly be appointed in a case of foreclosure of mortgage upon commencement of the action, I respectfully dissent.

Under our statute the estate remains in the mortgagor as owner until divested by foreclosure, and of course must continue so, with all the incidents of ownership, until a new owner is invested with title under the sale.