# SOLOMON WEIL, RESPONDENT, v. THOMAS B. HOWARD, APPELLANT.

COMMON LAW JUDGMENT IN FORECLOSURE ACTION. In a suit to foreclose a mortgage there may be a good common law judgment for the debt, which cannot be enforced until the equitable remedy against the mortgaged property is exhausted.

DOCKETING PERSONAL JUDGMENT IN FORECLOSURE ACTION. Under Section 204 of the Practice Act, as a general rule, every money judgment may be immediately docketed and thereby become a lien; but such is not the effect of the docketing of a personal judgment in a foreclosure case, for the reason that such judgment is suspended until after the equitable remedy against the mortgaged property is exhausted.

EXECUTION FOR DEFICIENCY IN FORECLOSURE ACTION. Under our system of practice, if a plaintiff in a foreclosure suit takes simply a decree in equity without a common law judgment, (as he may do at his option) and the mortgaged property falls short of paying the entire debt, he may take out an execution for the balance.

LIEN OF FORECLOSURE JUDGMENT. Section 246 of the Practice Act limits the lien of a foreclosure judgment or decree, whatever its form, to the mortgaged property until it is exhausted; and there can be no judgment lien upon other property until a deficiency is duly ascertained and docketed.

PREMATURE ENTRIES IN JUDGMENT DOCKET. Stern and Weil obtained a judgment against Gaines for a certain amount of money secured by mortgage and for foreclosure of the mortgage, which personal judgment they immediately caused to be docketed. The usual order of sale of the mortgaged property being then issued, the sheriff afterwards returned that he had sold the entire mortgaged property to satisfy a prior mortgage upon it, and that there was a deficiency of the whole amount of the Stern and Weil judgment: *Held*, that the docketing of the judgment at the time of its rendition was inoperative, and of no effect so far as the creation of any lien upon Gaines' other real estate was concerned; but that the docketing took effect and became valid, so as to create a lien upon such other real estate at and from the time of the sheriff's return.

THE SAME. Where the proper entries for the docketing of a judgment are prematurely made, it is unnecessary for the clerk to make them over again; when the proper time arrives at which they should be made, they become operative and effectual.

MISTAKE IN HEADING OF COLUMN IN JUDGMENT DOCKET. Under Section 205 of the Practice Act, the fifth column of the judgment docket should be headed "Time of Entry," the intention being to show when the judgment is entered; but where the heading was "When Docketed," and it appeared that the judgment was entered docketed on the same day: *Held*, that the mistake in the heading of the column did not affect the lien.

IRREGULAR JUDGMENT FOR GOLD COIN NOT VOID. Where a judgment otherwise
proper was irregularly made payable in gold coin, and a sale of property was
made under it for gold coin: *Held*, that though the judgment was erroneous,
it was not void; that the sale might have been set aside on that ground had
application therefor been made, but that it could not be attacked collater-
ally.

APPEAL from the District Court of the First Judicial District,
Storey County.

This was an action of ejectment for lot number sixteen in block
number two of range D, in the town of Gold Hill, in Storey County.
The suit was originally commenced against C. Miller, the occupant
of the ground; but upon his plea, setting up that he held merely
as tenant of Thomas B. Howard, and by stipulation of counsel,
the landlord was substituted in his place; and the action proceeded
as if it had originally been commenced against Thomas B. Howard
and he were in the actual possession of the lot in controversy.

*Henry K. Mitchell*, for Appellant.

I.

A judgment does not become a lien upon real property until the
same is docketed in the manner required by law. (Practice Act,
Secs. 204, 205.)   In cases of the foreclosure of mortgages, when
the decree ascertains the amount due and gives personal judgment
for such amount, then directs the sale of the mortgaged premises,
the application of the proceeds according to the priority of the
respective liens, and provides for the surplus and deficiency, and
requires the Sheriff to make report of such deficiency, no lien can
be created until such deficiency is ascertained and judgment dock-
eted therefor. (Practice Act, Sec. 246; *Chapin* v. *Broder*, 16 Cal.
421; *Cobb* v. *Thornton*, 8 How. Pr. 66; *Cormerais et al.* v. *Gen-
ella*, 22 Cal. 125; 28 Cal. 520.)   In this case no lien was created
on the property in dispute until levy under execution, for the reason
that the deficiency, although it might have been ascertained, yet
judgment was not docketed therefor as required by Section 246 of
the Practice Act.

II.

The return of the Sheriff shows that the right, title, and interest
of Gaines, on the day the judgment and decree were entered, was

levied upon and sold. If the judgment was not docketed as required by law, then no lien was created; and after the deficiency was ascertained, but not docketed, a lien could only be created under execution by actual levy. The return states that levy was made. It does not show the acts of the officer necessary to constitute a levy. A conclusion is stated which is not a compliance with the law. If the acts required by the officer to be done were not complied with, a sale of property on which a levy had not been made would be void, and plaintiff could not take anything by reason of his purchase. A levy upon real property under execution issued upon a judgment not a lien upon the property can only be made by leaving a copy of execution with the occupant, and in case there is no occupant, by posting copy of execution in conspicuous places on property and filing copy with the Recorder. (Statutes of 1861, 350, Sec. 217, and 104, Sec. 8.)

### III.

The judgment under which plaintiff claims title is void. It requires the payment of plaintiff's demand in gold coin. The execution issued upon such judgment required the Sheriff to sell for gold coin. The advertisements of the Sheriff are for gold coin and the sale made for gold coin. (*Hastings* v. *Burning Moscow Co.*, 2 Nev. 100.)

### IV.

Defendant claims title from Gaines by deed dated November 24th, 1866, prior to any lien under judgment in favor of plaintiff, and prior to any levy under execution upon such judgment.

*David Bixler*, for Respondent.

### I.

The judgment of Weil against Gaines is not void by reason of its containing a clause making the same payable in gold coin, but merely voidable. (*Hastings* v. *Burning Moscow Co.*, 2 Nev. 105; Ib. 96–99; *Milliken* v. *Sloat*, 1 Nev. 584; *Sholes* v. *Stead*, 2 Nev. 109.)

### II.

The judgment being merely voidable, cannot be impeached collaterally. (*Whitwell* v. *Barbier*, 7 Cal. 54; *Alderson* v. *Bell*, 9

Cal. 315; *Rowley* v. *Howard*, 23 Cal. 401; *Reynolds* v. *Harris*, 14 Cal. 678.)

## III.

In a foreclosure case judgment may be rendered for the amount found due on the personal obligation, to secure which the mortgage is executed. (*Rollins* v. *Forbes*, 10 Cal. 300; *Rowe* v. *Table Mountain Co.*, Ib. 444; *Rowland* v. *Lieby*, 14 Cal. 151; *Chapin* v. *Broder*, 16 Cal. 422; *England* v. *Lewis*, 25 Cal. 348; *Cormerais et al.* v. *Genella*, 22 Cal. 126; *Nosler* v. *Haynes*, 2 Nev. 53.)

## IV.

Where such a judgment is rendered, when docketed it becomes a lien, in accordance with the statute. (*England* v. *Lewis*, 25 Cal. 349; *Chapin* v. *Broder*, 16 Cal. 404; *De Agreda* v. *Mantel*, 1 Abbott P. R. 135; *Townshend* v. *Wesson*, 4 Duer, 353.)

We are aware that the Supreme Court of California in *Culver* v. *Rogers*, (28 Cal. 520) has decided that the personal judgment cannot be docketed until after a sale. But we are at a loss to reconcile this with the case of *England* v. *Lewis*, and the reasons assigned in the decision do not strike us by any means as satisfactory.

Can it be possible that the personal judgment may be made the instrument of a lien through a levy under *fi fa* immediately, and yet not by the medium of the docket? Either no personal judgment can be rendered at all, or else it must be attended with all the incidents of such a judgment. Otherwise it can subserve no purpose whatever, and is worse than useless.

## V.

The sale being under a voidable and not a void judgment, is valid. (*Gray* v. *Hawes*, 8 Cal. 562; *Hastings* v. *B. Moscow Co.*, 2 Nev. 105.)

## VI.

Admitting, for the sake of the argument, that the personal judgment could not be properly docketed in the first instance upon its rendition, such docketing became operative as of the time when the Sheriff's return was made showing the deficiency. (*Wardell* v.

*Mason,* 10 Wend. 573; *Trance, Sheriff, &c.,* v. *Hamilton et al.,* 26 How. P. R.)   In the last cited cases judgments were filed or docketed before they properly should have been; that is to say, before the time fixed by law for the opening of the Clerk's office, yet they took effect as liens at the earliest moment when they might have been docketed.   (See also *Scriba* v. *Deans,* 1 Brock. 167; *Bank of United States* v. *Winston's Executors,* 2 Brock. 252.)

By the Court, BEATTY, C. J.

Some time prior to the year 1865, one Richard Gaines executed two mortgages on the same property, one to Thomas B. and Mary J. Howard, and the other to Stern & Weil.   Thomas B. and Mary J. Howard commenced suit in the District Court of the first Judicial District, Storey County, to foreclose their mortgage, making Stern & Weil, the junior mortgagees, parties defendant.   Stern & Weil filed their answer in the nature of a cross bill, asking a foreclosure of their junior mortgage.   In due time a judgment and decree were rendered in the case—a judgment in favor of Howard and wife, and also a judgment in favor of Stern & Weil against the defendant for the respective amounts found due to each.   Then follows a decree in equity, directing the sale of the mortgaged property and the application of the proceeds, followed by an order to the Sheriff to report any deficiency of the proceeds of sale to satisfy either or both judgments.   This double judgment and decree were rendered June 9th, 1865, and on the same day the Clerk docketed the judgment in favor of Stern & Weil.   In due time the order of sale was issued, and on the 20th of July, 1865, T. B. Howard became the purchaser of the mortgaged property at the amount of the mortgage debt and and costs due to himself and wife, thus exhausting the property without leaving anything to be credited on the debt due to Stern & Weil.   The date of the return of the Sheriff is not given, but this was probably soon after the sale was made, say about the latter part of July, 1865.   In November, 1865, the defendant Gaines deeded to T. B. Howard a piece of real estate in Storey County which had not been included in the mortgage.   In December of the same year, Stern & Weil caused an execution to be issued on their judgment, and levied on the same

.real estate which had been deeded the previous month to T. B. Howard. The sale was made under the Stern & Weil execution, and Weil became the purchaser. In due time he got his deed, and this suit was brought against Miller, the tenant of Howard, to obtain the possession of the land.

Both parties deraign title from Richard Gaines—one by voluntary deed, and the other by the Sheriff's deed. The main question in the case is whether under the circumstances Stern & Weil had a judgment lien on this property in November and December, 1865. It may be observed that the judgment of Stern & Weil was for gold coin, and that it is claimed by appellant that this rendered it utterly void and prevented any lien attaching.

We borrowed our Practice Act almost exclusively from that of the State of California, hence the propriety of looking to the decisions of that State upon matters of practice. As the law of California stood prior to 1860, it was the general practice of Courts there to enter a sort of double judgment in foreclosure suits. The first part thereof being in the form of a common law judgment, and this followed by a formal decree in equity for the sale of the mortgaged property, and winding up with an order, in the event the debt was not satisfied by the sale under the equity decree, that an execution should issue for the unpaid balance. When this practice was adopted the 246th section of the Practice read as follows: "In an action for the foreclosure or satisfaction of a mortgage of real property, or the satisfaction of a lien or incumbrance upon property, real or personal, the Court shall have power by its judgment to direct a sale of the property, or any part of it; the application of the proceeds to the payment of the amount due on the mortgage, lien or incumbrance, with costs, and execution for the balance."

This practice of thus entering up a double judgment was approved by the. Supreme Court of the State in a number of cases. (See *Chapin* v. *Broder*, 16 Cal. 422, and cases there cited.) It was also held that under the law as it then stood, when such personal judgment was docketed it became a lien on other property than that mortgaged. (See *England* v. *Lewis*, 25 Cal. 357–8.) In 1860 and 1861 the 246th section of the Practice Act was amended in California so as to read as follows:

" There shall be but one action for the recovery of any debt, or the enforcement of any right, secured by mortgage or lien upon real estate or personal property, which action shall be in accordance with the provisions of this chapter. In such action the Court shall have power, by its decree or judgment, to direct a sale of the incumbered property (or such part thereof as shall be necessary) and the application of the proceeds of the sale to the payment of the costs and expenses of the sale, the costs of the suit, and the amount due to the plaintiff. If it shall appear from the Sheriff's return that there is a deficiency of such proceeds and a balance still due to the plaintiff, the judgment shall then be docketed for such balance against the defendant, or defendants, personally liable for the debt, and shall, from the time of such docketing, be a lien upon the real estate of the judgment debtor, and an execution may thereupon be issued by the Clerk of the Court in like manner and form as upon other judgments to collect such balance or deficiency from the property of the judgment debtor."

The 246th section of our Practice Act is very similar in language to the amended section of the California Act.

After the final amendment to this section in 1861, the question came up in California whether the old practice of entering a personal judgment in a foreclosure suit was a proper practice. The Supreme Court of that State, in the case of *Cormerais et al.* v. *Genella,* (22 Cal., pages 125–6–7) held that the amendment of the Practice Act in 1860–61 did not deprive the Court of the power to enter the old-fashioned common law personal judgment, but did prohibit the docketing of that judgment—the creation of a lien or the issuance of an execution thereon until the deficiency, if any, was ascertained by the sale of the mortgaged property under the equitable decree, and the return of the Sheriff, showing the exact amount of such deficiency. The question whether under the amended law the rendition of a personal judgment in a foreclosure suit and the docketing of that judgment could create a lien on real estate not included in the mortgage, before there had been a sale of the mortgaged premises, and a return of the Sheriff showing the deficiency, came directly before the Supreme Court of California, in the case of *Culver* v. *Rogers,* (28 Cal. 520). The Court then held that no lien arose until the deficiency was reported.

The respondent, however, contends that the decisions in cases of *Cormerais et al.* v. *Genella*, (22 Cal.) and *Culver* v. *Rogers*, (28 Cal.) are irreconcilable with the views expressed by the same Court, in *England* v. *Lewis*, (25 Cal.) and that the latter case is the better authority, and should prevail.    We are free to admit that we cannot reconcile the three cases, or at least the reasoning in the case of *England* v *Lewis* with the decisions in 22 and 28 Cal.    That portion of their opinion in *England* v. *Lewis* which asserts that " a judgment which cannot be enforced is no judgment at all," is certainly calculated to mislead.    There may be a perfectly good judgment which for the time being at least cannot be enforced.    A valid judgment, free from all errors, is frequently suspended as to enforcement, by appeal, by injunction, by order of the Court which rendered it, etc.    In *England* v. *Lewis* there was a judgment in common law, followed by a decree in the usual form for the foreclosure of a lien, the sale of the property, etc., and winding up with an order that execution might issue for the balance not made by the sale of the property on which the lien was decreed to exist.    This, it appears to us, shows a good common law judgment, and at the same time shows that the judgment was in effect suspended, and not to be enforced by execution until the equity remedy was exhausted.    But the Court in that case held that the remedy at law was not suspended.    That if the Court had the power to enter a common law judgment, the right must exist in the plaintiff to enforce that judgment, before exhausting or resorting to his equitable remedy.    That an appeal which suspended proceedings on the equitable part of the decree, did not interfere with the plaintiff's right to proceed at law.    If this doctrine is correct, and it is also true that as the Practice Act now stands a common law judgment may lawfully be entered against the defendant in a foreclosure suit, it follows as a matter of course that the common law judgment being docketed may be enforced against the real estate of the mortgagor which is not included in the mortgage.    But we can assent to no such doctrine.    There may be a good common law judgment which cannot be enforced until an equitable remedy in favor of the plaintiff is exhausted.    And this suspension of the vitality of the judgment may arise either from statutory enactment, or from an order

of the Court in which the judgment is rendered.   The question here is whether our statute does suspend the common law remedy until the equitable remedy has been exhausted.

Section 204 provides for docketing judgments immediately after rendition, and declares that from the time of docketing they shall be a lien on all real estate.   Here there is no exception.   If we were governed by this section only, there could be no doubt but that in all cases where there is a money judgment it should be immediately followed by a docketing, and that docketing would create a lien.   Section 246, after prescribing the manner of proceeding, form of decree, etc., in foreclosure cases, winds up as follows :  " If it shall appear from the Sheriff's returns that there is a deficiency of such proceeds, and a balance still due to the plaintiff, the judgment shall be docketed for such balance, and shall, from the time of such docketing, be a lien upon the real estate of the judgment debtor, and an execution may be issued by the Clerk of the Court, as on other judgments against the property of the judgment debtor, to collect such balance or deficiency."   This does not in express terms declare that a personal judgment in a foreclosure suit shall not be a lien from the time of its rendition.   The respondent with much ingenuity argues that this section only provides for creating a lien where there is a simple decree in chancery and no judgment at law to which a resort may be had for a deficiency.   Under the chancery practice in many States, and now by rule of the Supreme Court of the United States in the Federal Courts, where a decree has been rendered in chancery, and the mortgaged property does not pay the debt, an execution issues for the balance.   So, too, under our Practice Act, where the common law and equity systems are combined, if the plaintiff takes simply a decree in equity, without the common law judgment, (as he may do at his option) and the mortgaged property falls short of paying the entire debt, then he may obtain his execution for the balance.   And he might at the same time have an entry made on the judgment docket, showing this balance, thereby creating a lien on the real estate of the defendant.   But we cannot agree with the respondent that this is the only effect of the 246th section.   We think the intention of the California Legislature in framing that section as it now stands was

to limit the lien of a foreclosure judgment or decree, whatever the form, to the mortgaged property until that was exhausted.    The direction that the judgment shall be docketed for the balance found due, and become a lien from that time, raises the strongest possible presumption that the Legislature did not intend it to be a lien before that balance should be ascertained.    The right of attaching a debtor's goods was, under the same Practice Act, denied to one holding a mortgage.    It was then but natural, just and consistent to put the mortgagee having the judgment on the same footing with the attaching creditor.    Both were by this amendment intended to be confined to their mortgages until exhausted.    Our Legislature borrowed their Practice Act from that of California, and we think meant the same thing.    The Court in California in the case of *Culver* v. *Rogers*, (28 Cal.) have fully decided this point, and we think the decision right.

The entry of Stern and Weil's judgment in the docket on the 9th of June was then but an idle ceremony.    It created at that time no lien and put them in no better position than if no such entry had been made.    But after the return of the officer in July, it became the duty of the clerk to make an entry in the docket of the amount of the judgment remaining due, and from that time forward Stern and Weil would have had a lien for the period of two years, or until the debt was satisfied.    Here the clerk has done a thing which at the time done was idle and useless; but the same thing, if done at a later date, would have been perfectly proper and effectual.    Now, this being the case, did not this entry take effect on the day of the officer's return, just the same way as if it had been made on that day ?    The day of the return on the order of sale it is the duty of the clerk to make a certain entry on his docket.    He looks at the docket and there finds the entry made.    Would it be necessary to make the same entry over again ?    It seems to us not.    The proper entry was made; it was made prematurely, and for a time it was inoperative and of no effect.    When the time arrived at which it should have been made, then it became operative and effectual.

It is admitted this entry on the docket was made the 9th of June ; but if it had been made the day the officer made his return,

26

say the last of July, would it have varied in a single word or figure from what it was as made in June? Section 205, in regard to the clerk's docket, reads as follows:

" The docket mentioned in the last section is a book which the clerk shall keep in his office, with each page divided into eight columns, and headed as follows: Judgment debtors; judgment creditors; judgment; time of entry; where entered in judgment book; appeals, when taken; judgment of appellate Court; satisfaction of judgment, when entered. If judgment be for the recovery of money or damages, the amount shall be stated in the docket under the head of judgment; if the judgment be for any other relief, a memorandum of the general character of the relief granted shall be stated. The names of the defendants shall be entered in the docket in alphabetical order."

Now let us see what the proper entries would have been in this docket if made in July instead of June. In the first column the entry made was " Gaines Richard;" this was appropriate, whether made in June or July. The entry in the second column was " Stern and Weil." This would be right whether made at one time or the other. The entries made in third column, that is under the general heading of amount of judgment, are as follows: Principal, $1,518.66; costs, $5. Under this third heading there might have been some memorandum in July showing that the judgment was rendered in a foreclosure suit, and that the mortgaged property was exhausted by a prior mortgage and nothing left to be applied on this. But the law does not require any such form, and we apprehend the entry as made would have been a substantial compliance with the statute, if made in July. The entry in the fourth column is " B, 443;" this would require no change. The entry in the fifth column is " June 9th, 1865." This column is headed " when docketed." This is not correct. The heading of this column of the docket should be "time of entry," or " time of entry of judgment." The statute intended evidently that this column should show when the *judgment was entered*.

A mistake in the heading of this column could not affect the plaintiff's lien. This entry, then, referring to the date of the judg-

ment, would not have been different if made in July. The other entries about appeal, judgment of appellate Court, satisfaction, etc., could not be affected by the fact that the entry was prematurely made. We hold then that these entries being precisely what they would have been if made the day the officer made his return, must be held to have taken effect from and after that date as a valid docketing of the judgment of Stern and Weil ; that there was from the day of the officer's return a lien on this property, and that Weil by his purchase obtained a title good against Gaines and those holding under him.

Judgment being entered in gold coin made it erroneous, but not void. This would have been good ground for setting aside the sale if application had been made for that purpose at the proper time. But the sale under such a judgment is not void.

Judgment affirmed.

JOHNSON, J., did not join in the foregoing decision.