JAMES B. McMILLAN, APPELLANT, v. UNITED MORTGAGE CO., A NEVADA CORPORATION, RE-SPONDENT.

No. 4944

March 29, 1966                    412 P.2d 604

*Robert L. Reid,* of Las Vegas, for Appellant.

*Deaner, Butler & Adamson,* of Las Vegas, for Respondent.

# OPINION

By the Court, THOMPSON, J.:

This appeal concerns the remedy open on default to the holder of promissory notes secured by second deeds of trust. Involved is the interplay of two statutes: the "one-action rule" announced in NRS 40.430 pertaining to the enforcement of a right secured by mortgage on real estate, and NRS 31.010 which allows ancillary attachment in an action upon a note when the security has become valueless, or of insufficient value.

United Mortgage, the payee and holder of 27 promissory notes made by McMillan, and the beneficiary of 27 second trust deeds given as security therefor, commenced a district court action against McMillan, and attached certain of his assets. Each note was for $1,950 (total, $52,650). The 27 second trust deeds were junior to a first deed of trust which had been given by McMillan, as trustor, to Nevada Savings & Loan Association, beneficiary, to secure a $906,000 debt. Inter alia, the complaint alleged, on information and belief, that McMillan had defaulted on his obligation for which the first deed of trust was security, and that "foreclosure proceedings" had been commenced thereon.[1] The affidavit of attachment asserted that the payment of the debt of $52,650 was secured by a mortgage, lien or

---

[1]For convenience, we, too, will use the mortgage term "foreclosure," though perhaps not precisely accurate as applied to a trustee's sale under a trust deed.

pledge, "but that said mortgage, lien or pledge has become valueless." Pursuant to NRS 31.200 (1a) McMillan moved to discharge the attachment. His motion was denied and this appeal followed.

Here it is not suggested that the notes or the trust deeds grant a right to sue before exhausting the security. Nor did United Mortgage, before starting this suit, expressly or impliedly waive its security. The early case of Hyman v. Kelly, 1 Nev. 179 (1865), hints that one may abandon the security and sue for the collection of the debt. Instead, United Mortgage wishes to pursue alternative courses simultaneously, and we must decide whether this is permissible.

1. In the absence of a preclusive statute, two remedies are open on default to the holder of a secured promissory note. The debt may be enforced by a suit on the note, or by a sale of the land. At common law the creditor could pursue either remedy, or both at once. Bank of Italy v. Bentley, 217 Cal. 644, 20 P.2d 940 (1933). McMillan here contends that NRS 40.430[2] is such a preclusive statute and forces the creditor to first exhaust the security or show that it is valueless. Therefore, he suggests that this action upon the promissory

[2]NRS 40.430 reads: "There shall be but one action for the recovery of any debt, or for the enforcement of any right secured by mortgage or lien upon real estate, or personal property, which action shall be in accordance with the provisions of this section, and NRS 40.440 and 40.450. In such action, the judgment shall be rendered for the amount found due the plaintiff, and the court shall have power, by its decree or judgment, to direct a sale of the encumbered property, or such part thereof as shall be necessary, and apply the proceeds of the sale to the payment of the costs and expenses of the sale, the costs of the suit, and the amount due to the plaintiff. If the land mortgaged consists of a single parcel, or two or more contiguous parcels, situated in two or more counties, the court may, in its judgment, direct the whole thereof to be sold in one of such counties by the sheriff, and upon such proceedings, and with like effect, as if the whole of the property were situated in that county. If it shall appear from the sheriff's return that there is a deficiency of such proceeds and balance still due to the plaintiff, the judgment shall then be docketed for such balance against the defendant or defendants personally liable for the debts, and shall, from the time of such docketing, be a lien upon the real estate of the judgment debtor, and an execution may thereupon be issued by the clerk of the court, in like manner and form as upon other judgments, to collect such balance or deficiency from the property of the judgment debtor."

notes was premature as the security had not been exhausted when suit was commenced, and until that is done a court cannot know whether the security is valueless, or of insufficient value to secure the debt. On the other hand, United Mortgage suggests that the "one-action rule" does not preclude suit on the note when the security for the debt has become valueless, or of insufficient value; to rule otherwise would effectively nullify the intendment of NRS 31.010 allowing ancillary attachment in these circumstances.[3] We turn to resolve these divergent views.

2. We must first decide whether a trust deed falls within NRS 40.430. The statute uses the term "mortgage." A trust deed is not mentioned. Also, it refers to an "action" for the recovery of a debt, and a "judgment" in that action. Thus, it is argued, that as a trust deed is technically not a mortgage, and is "foreclosed" by sale at public auction (NRS ch. 107) rather than by court action, the statute cannot apply.[4] The argument is not without persuasion. Yet California, from whom our statute was borrowed, holds squarely that a trust deed is within the statutory "one-action rule" relating to mortgages. In the leading case, Bank of Italy v. Bentley, supra, the court wrote: "Fundamentally, it cannot be doubted that in both situations the security for an

[3]NRS 31.010, in pertinent part, reads: "The plaintiff at the time of issuing the summons, or at any time afterwards, may have the property of the defendant attached as security for the satisfaction of any judgment that may be recovered, unless the defendant gives security to pay such judgment, as hereinafter provided, in the following cases: (1) In an action upon a judgment or upon a contract, express or implied, for the direct payment of money, which is not secured by mortgage, lien or pledge upon real or personal property situated or being in this state; or if originally so secured, when such security has, without any act of the plaintiff or the person to whom the security was given, become valueless or insufficient in value to secure the sum due the plaintiff, in which case the attachment shall issue only for the unsecured portion of the amount due the plaintiff, or excess of the amount due the plaintiff above the value of the security as the same has become so insufficient."

[4]The differences between a trust deed and a mortgage are explored in depth by Professor A. M. Kidd at 3 Cal.L.Rev. 381 (1915).

indebtedness is the important and essential thing in the whole transaction. The economic function of the two instruments would seem to be identical. Where there is one and the same object to be accomplished, important rights and duties of the parties should not be made to depend on the more or less accidental form of the security." That court went on to state that in either event (whether a mortgage or a trust deed) there is an implied understanding between the parties that the land shall constitute the primary fund to secure the debt. As a practical matter there is no substantial dissimilarity between a mortgage with a power of sale and a deed of trust, except for the statutory right of redemption. Sims v. Grubb, 75 Nev. 173, 336 P.2d 759 (1959). We therefore agree with California, and hold that a trust deed is within the intendment of NRS 40.430.

3. Having determined that a trust deed falls within the intendment of the "one-action rule," we must next consider the province of NRS 31.010(1) allowing an ancillary attachment when the security has become valueless or of insufficient value. California tells us that part of the attachment statute "refers to a case where the security has changed in the value it had when originally taken, and has so depreciated as to become of no value." Barbieri v. Ramelli, 84 Cal. 154, 23 P. 1086 (1890). There is no suggestion in this case that there has been a change in the value of the security between the date it was given and the default of McMillan. We think the creditor's conclusory affidavit to be simply an expression of fear that a sale will not bring enough to satisfy McMillan's obligations. In any event, the creditor's opinion of value may not be substituted for the mode of determining that fact. Security First National Bank of Los Angeles v. Chapman, 31 Cal.App.2d 182, 87 P.2d 724 (1939). That mode is first to exhaust the security by sale pursuant to the trust deed. Barbieri v. Ramelli, supra; Hill v. Grigsby, 32 Cal. 55 (1867), where on appeal the court affirmed an order discharging an attachment; Page v. Latham, 63 Cal. 75 (1883), where the appellate court reversed an order refusing

to discharge an attachment; Giandeini v. Ramirez, 11 Cal.App.2d 469, 54 P.2d 91 (1936), reversing an order refusing to discharge an attachment; Mason v. Jansen, 45 Idaho 354, 263 P. 484 (1927). Dictum of the early Nevada case of Weil v. Howard, 4 Nev. 384 (1868) is in accord. Once the security has been sold and the debt not satisfied, an action on the note with ancillary attachment is permissible. Sims v. Grubb, supra. (Action on the debt, no discussion re attachment.) We reject any expressions in Vande Veegaete v. Vande Veegaete, 75 Mont. 52, 243 P. 1082 (1925), and Edminster v. Van Eaton, 57 Idaho 115, 63 P.2d 154 (1936), which are inconsistent with our views.

In ruling that the holder of a note, secured by a trust deed, must first exhaust the security before an action on the note and ancillary attachment is permissible, we are aware that exceptions exist. Sale of the security is the primary remedy. However, the attachment statute may be utilized if the security, without fault of the mortgagee or beneficiary, has become valueless, as where the security has been destroyed by fire and other similar situations. See Note, 25 Cal.L.Rev. 469 (1937); Annot., 108 A.L.R. 397.

For the reasons expressed, the order below refusing to discharge the attachment is reversed.

BADT, J., concurs.

BARRETT, D. J., dissenting:

I dissent.

The appellant has described the problem here involved in his statement of the nature of the action, "This is an appeal from an order denying motion to discharge a writ of attachment." It is the position of this writer that the decision of this court should be limited to that issue alone, and should not in anywise be based upon a possible ground for a motion to dismiss the entire action, which, it seems to me, is the basis of the majority opinion. If a ground for dismissal exists, then the appellant should have pursued that course under Rule 12, NRCP. At line 4, page 5, of appellant's opening brief,

he states: "The respondent's complaint and affidavit in support of attachment *fails to state a cause of action* upon which a writ of attachment can properly be granted." (Emphasis added.)

Granted that rules of pleading should be liberally construed in the trial court, certainly some precision should be expected and required on any application to an appellate court. The function of an appellate court is to consider the specific question presented to it in the light of the rules governing appellate practice and procedure, and not to attempt to find some way to provide relief regardless of the inadequacy of the appellant's presentation. Ordinarily this means that the lower court should be affirmed unless it clearly appears that the appellant has established a right to the specific relief requested.

The California Supreme Court recognized the difference between a motion to dismiss and a motion to discharge an attachment in two opinions rendered in 1890, one being Barbieri v. Ramelli, 84 Cal. 154, 23 P. 1086 (1890), and the other being Barbieri v. Ramelli, 84 Cal. 174, 24 P. 113 (1890). The first case, which is cited in the majority opinion, reversed the judgment rendered in the trial court because of the "one-action rule" and ordered dismissal. Justice McFarland concurred only because the decision was consistent with earlier decisions, and stated, "If the question were an open one, I would come to a different conclusion." The second Barbieri v. Ramelli opinion was on an appeal in the same case from an order of the trial court denying a motion to discharge and dissolve an attachment. The defendants filed an affidavit in support of their motion to discharge the attachment in which facts were specifically set forth showing that the security had not depreciated in value, but rather had increased in value. Justice McFarland wrote the unanimous opinion of the Court and stated at page 114 of 24 P.: ". . . It is true that the affidavit of plaintiff states the general conclusion that the mortgage has become valueless, which was sufficient, no doubt, to justify the clerk in issuing the writ; but the affidavit of defendant contained a statement of specific facts which, if true, shows that the mortgage had not become valueless. Plaintiff had the opportunity, under section 557 of

the Code, to contradict these specific statements of fact made by defendant, or to state any other facts; and, not having done so, we think that defendant's affidavit must be taken as establishing the truth of what it contains. And, if the security had not become valueless, then defendants were entitled to have the attachment dissolved. Of course, if there had been any substantial conflict in the evidence as to the facts involved, we would not disturb the ruling of the court below." The lower court was reversed, but only because the plaintiff did not meet the defendants' evidence regarding value.

Before going further, I wish to state that I agree that a trust deed clearly falls within the intendment of NRS 40.430. It should likewise be clear, and it is to me, that the "one-action statute" does not preclude suit on the note when the security for the debt has become valueless, or of insufficient value, and that attachment may issue in the action so filed. In providing as it did in § 1 of NRS 31.010, the legislature could have had no other intention than to allow such a suit and attachment.

In my opinion, the only question here involved is whether the writ of attachment was improperly issued.

NRS 31.200 provides three grounds for discharge of attachment, the first of which, " (a) That the writ was improperly issued," being the only possible ground available in this case.

NRS 31.210 provides that when a motion to discharge attachment is made on affidavits, the plaintiff may oppose by affidavits.

NRS 31.220 provides as follows: "If upon such application it satisfactorily appears that the writ of attachment was improperly or irregularly issued, it must be discharged; *but such attachment shall not be discharged if at or before the hearing of such application the writ of attachment or the affidavit or undertaking upon which such attachment was based shall be amended and made to conform to the provisions of this chapter.*" (Emphasis supplied.)

The italicized language can only be interpreted to mean that "improperly or irregularly issued" refers solely to defects contained in the writ of attachment or the affidavit or the undertaking. Clearly, the propriety

of the bringing of the action has nothing to do with possible defects in the writ, the affidavit or the undertaking. The language of the second Barbieri v. Ramelli case supports this position. And, although not directly in point, Kuehn v. Patroni, 20 Nev. 203 (1888), is definitely helpful. There this court stated, in substance, that a motion to discharge attachment pursuant to NRS 31.200 should be denied where the affidavit in support of the motion consists of denials of general facts constituting the cause of action set forth in the complaint—that matters involving the merits of the case will not be considered on such a motion.

Also, see 6 Am.Jur.2d, Attachment and Garnishment § 429 at page 862: "As a general rule, the merits of the action aided by attachment cannot be inquired into or adjudicated in a motion to dissolve the attachment; otherwise an applicant for the dissolution could force a trial of the merits of the case on his motion. . . . However, in some instances, inquiry into the merits of the main action have been allowed, usually as an exception to, or relaxation of, the general rule; . . ."

Also see Witkin, California Procedure, Provisional Remedies § 93, page 926: "(1) Cause Not Within C.C.P. 537. If the cause of action stated in the complaint is not within the class of cases in which attachment will issue, the attachment may be dissolved. (Citations.) (2) No Cause of Action. Suppose the complaint sets forth a type of action within the terms of C.C.P. 537 but, tested by the rules of pleading, it fails to state a cause of action. It might well be argued that the attachment should be dissolved. However, two rules usually operate to preclude this result: First, the merits of the main case cannot be determined on a motion to discharge an attachment. (Citations) Second, the motion cannot be made to operate as a demurrer, i.e., it cannot raise defects of pleading which are capable of cure by amendment. (Citations.)."

Also see Section 2, Rule 35, District Court Rules: "No attachment shall be dissolved by reason of any defect in the attachment papers that can be amended without affecting the substantial rights of the parties."

The only possible ground the appellant can have for

discharging the attachment is the sufficiency of the affidavit, and it very definitely appears that this ground was never raised in the court below. The appellant seeks to show that this point was raised in the lower court by stating in his reply brief at line 3, page 2, "The sufficiency of the affidavit in support of attachment is automatically put in issue where the holder of a deed of trust secured by an interest in real property attempts to bring direct action on the debt." This is a feeble effort, wholly without supporting authority, and even if true, would be of no avail since the point was never mentioned in the lower court. If the integrity of decisions of trial courts is to be recognized and preserved, no one should be allowed to play fast and loose with the courts' efforts and functions, and irresponsibility on the part of counsel should not be countenanced.

Had the sufficiency of the affidavit been raised in the lower court, I would consider that the rule stated in Barbieri v. Ramelli, supra, would supply ample authority for holding that the appellant, having furnished no evidence regarding value, would not be entitled to have the attachment discharged, regardless of the sufficiency of the affidavit, which, incidentally, in this case leaves something to be desired.

For the reasons stated, the order of the lower court denying the motion to discharge attachment should be affirmed.