NEVADA WHOLESALE LUMBER COMPANY, a Nevada Corporation, Appellant, v. MYERS REALTY, INC., a Nevada Corporation, Respondent.

No. 7821

January 23, 1976                    544 P.2d 1204

A. D. Jensen, of Reno, for Appellant.

Emerson J. Wilson, Ltd., of Reno, for Respondent.

## OPINION

By the Court, BATJER, J.:

Myers Realty, Inc., plaintiff below and respondent on appeal, brought an action against Nevada Wholesale Lumber Company (hereinafter referred to as Lumber Company), appellant, and Title Insurance and Trust Company to compel the latter as trustee to release and reconvey Lumber Company's interest in land upon which Lumber Company had a prior deed of trust. Myers Realty claimed title through foreclosure sale under a deed of trust executed by Ramart Corporation, successor in title from Paul and Lucy Lundgren who had, prior to their sale to Ramart Corporation, executed promissory notes and deed of trust in favor of Lumber Company.

In its complaint Myers Realty conceded Lumber Company's right to $7,767.44, plus interest, under its prior deed of trust and deposited that amount with the clerk of the court, but denied Lumber Company's right to $12,126.99, plus interest, for advances made subsequent to the Lundgrens' deed of trust securing the original $7,767.44. The lower court concluded that Lumber Company, by electing to seek a personal judgment

against the Lundgrens, is barred from seeking to realize on the underlying security and ordered the clerk of the court to disburse to Lumber Company $7,767.44, and Title Insurance and Trust Company to release and reconvey the property described in the deed of trust. The court held that $7,767.44, plus interest, is full and complete satisfaction of the obligation secured by the deed of trust executed by the Lundgrens in favor of the Lumber Company and granted Myers Realty's motion for summary judgment.

The events culminating in Myers Realty's complaint against Lumber Company began November 30, 1970, when the Lundgrens, owners in fee simple of the north 85 feet of Lot 8 and the east 25 feet of the north 85 feet of Lot 7, Block 32, Sparks, Nevada, executed a note in the sum of $7,767.44 in favor of Lumber Company, secured by a trust deed with Title Insurance and Trust Company as trustee. The Lundgrens furnished a description of the encumbered property for the deed of trust but mistakenly omitted approximately ten feet of the land upon which the improvements are partially located. On May 8, 1972, the Lundgrens, without notifying Lumber Company, conveyed fee simple title to Ramart Corporation. The property described in that deed included the land covered by the deed of trust to Lumber Company as well as the previously omitted portion. On December 16, 1972, approximately seven months after conveying away fee title, the Lundgrens executed their second promissory note to Lumber Company for $12,126.99, plus interest.[1] The second note was secured by the "dragnet clause" in the November 30, 1970, deed of trust to Lumber Company which secured additional sums advanced when evidenced by a promissory note.

Subsequently, on January 16, 1973, the owner of fee title, Ramart Corporation, executed a note and deed of trust to respondent, Myers Realty.

On February 7, 1973, Lumber Company recorded notice of default and election to sell the property encumbered by the Lundgren deed of trust dated November 30, 1970. At that time Lumber Company learned that the description in its deed of trust omitted approximately ten feet of the property. On February 12, 1973, action was commenced against the Lundgrens on an open account in the sum of $12,126.99, and the entire parcel was attached. A default judgment was entered in that

---

[1]The question has not been raised and we do not decide whether the Lundgrens could properly encumber the real property after they had conveyed away fee title. See Atkinson v. Foote, 186 P. 831 (Cal.App. 1919). See also, Courson v. Atkinson & Griffin, Inc., 198 S.E.2d 675 (Ga. 1973); Bullard v. Fender, 192 So. 167 (Fla. 1939).

action on June 28, 1973, and it remains unsatisfied. August 17, 1973, Myers Realty received and recorded its trustee's deed upon foreclosure and sale under the deed of trust executed by Ramart Corporation as trustor.

Lumber Company asserts that the lower court committed error in granting Myers Realty's motion for summary judgment for the reason that there were remaining material decisive issues of fact.

In deciding the propriety of the summary judgment we must view the evidence most favorable to the party against whom summary judgment was granted and give that party the benefit of all favorable inferences that may be drawn from the subsidiary facts. Ottenheimer v. Real Estate Division, 91 Nev. 338, 535 P.2d 1284 (1975); Brewer v. Annett, 86 Nev. 700, 475 P.2d 607 (1970); Old West Enterprises v. Reno Escrow Co., 86 Nev. 727, 476 P.2d 1 (1970). After reviewing the record and viewing the evidence most favorable to Lumber Company we find no material issue of fact to be resolved. Summary judgment was appropriate. NRCP 56(c); Olson v. Iacometti, 91 Nev. 241, 533 P.2d 1360 (1975); Tobler and Oliver v. Bd. Trustees, 84 Nev. 438, 442 P.2d 904 (1968); Nevada Land & Mtge. v. Hidden Wells, 83 Nev. 501, 435 P.2d 198 (1967).

Lumber Company contends that the trial court erred when it held, as a matter of law, that its claim of $12,126.99 was extinguished by the entry of judgment in that amount against the Lundgrens. Lumber Company and Myers Realty both agree that Lumber Company obtained a valid personal judgment against the Lundgrens either through their express waiver of the benefit of NRS 40.430[2] or by their implied waiver of its

[2] NRS 40.430: "1. Except as provided in chapter 104 of NRS, there shall be but one action for the recovery of any debt, or for the enforcement of any right secured by mortgage or lien upon real estate, which action shall be in accordance with the provisions of this section and NRS 40.440 to 40.459, inclusive. In such action, the judgment shall be rendered for the amount found due the plaintiff, and the court shall have power, by its decree or judgment, to direct a sale of the encumbered property, or such part thereof as shall be necessary, and apply the proceeds of the sale to the payment of the costs and the expenses of the sale, the costs of the suit, and the amount due to the plaintiff.

"2. A sale directed by the court pursuant to subsection 1 shall be conducted by the sheriff of the county in which the encumbered land is situated, and if the encumbered land is situated in two or more counties, the court shall direct the sale to be conducted in one of such counties by the sheriff of that county with like proceedings and effect as if the whole of the encumbered land were situated in that county."

protection through failure to defend Lumber Company's action on the open account.

The "one-action" rule, NRS 40.430, requires the holder of a secured note to first exhaust the security before action on the note and ancillary attachment is permissible. McMillan v. United Mtg. Co., 82 Nev. 117, 412 P.2d 604 (1966). However, a trustor may waive the benefits of the statute by failing to call the court's attention to the security on the note, even though NRS 40.453[3] precludes a mortgagor or trustor from waiving a right secured by the laws of the state in any *document* relating to the sale of real property. See Salter v. Ulrich, 138 P.2d 7 (Cal. 1943).

Here we must determine whether NRS 40.430 operates as a sanction to bar Lumber Company from realizing on its security after it had proceeded to judgment on the promissory note.

There is an indication by dictum in Hyman v. Kelly, 1 Nev. 179, 185–186 (1865), that the mortgagee who proceeds against the underlying obligation loses his right in the security. The court, in discussing the "one-action" rule stated: "The only construction we can put on these two sections is that the mortgagee shall pursue but one remedy, not two or three remedies at the same time, for the enforcement of his rights. And that remedy shall in no case be the action of ejectment to obtain the possession of the land. But the remedy shall be the equitable one of foreclosure and sale, if the mortgage is relied on. Perhaps, if the mortgagee chooses to *abandon* all claim under the mortgage, he may bring the ordinary suit for the collection of a debt." [Emphasis added.]

The indication in *Hyman* was acknowledged in McMillan v. United Mortgage Co., 82 Nev. at 119, where this court, after noting that the notes or trust deed did not grant a right to sue before exhausting the security and the payee of the notes and the beneficiary did not waive its security stated: "The early case of Hyman v. Kelly . . . hints that one may abandon the security and sue for the collection of the debt." In Paramount Ins. v. Rayson & Smitley, 86 Nev. 644, 649, 472 P.2d 530 (1970), the holding in *McMillan* that the action brought on the note was improper because there had been no waiver of the security, was approved.

----

[3]NRS 40.453: "1. It is hereby declared by the legislature to be against public policy for any document relating to the sale of real property to contain any provision whereby a mortgagor or trustor waives any right secured to him by the laws of this state.

"2. No court shall enforce any such provision."

In Salter v. Ulrich, supra,[4] C. A. Kassell encumbered property with a trust deed during the year 1929, in favor of Ulrich to secure a promissory note. Kassell then issued a street improvement bond to Oswald against the property. In 1934 Ulrich brought suit on his promissory note without mentioning to the trial court that the note was secured. Judgment was entered against Kassell and a writ of execution was issued. In 1936 the property was sold to Ulrich in partial satisfaction of the judgment. In December, 1936, between the execution sale and delivery of the deed, Oswald brought an action against Kassell to foreclose the lien of the bond; Ulrich was not named or served. Kassell defaulted, foreclosure was ordered, and the property was sold to Oswald on June 7, 1937. Salter bought Oswald's certificate and the commissioner issued his deed in 1938. The California Supreme Court affirmed the lower court's finding title in Ulrich but held that he had waived his security by suing on the note instead of foreclosing and, therefore, his title was subject to Salter's lien. "Defendant, [Ulrich] by suing on the note instead of foreclosing, chose to disregard the security given and to rely on the title secured on the execution sale. Defendant [Ulrich] thus made an election of remedies [citations omitted], and cannot now pursue the concurrent remedies of foreclosure by action or by trustee's sale. Having failed to try to cut off the rights of intervening creditors by foreclosing his deed of trust, defendant [Ulrich] cannot claim a greater title than his judgment debtor had at the time of the judgment and execution sale, and since the property was then subject to the lien of plaintiff's [Salter's] street improvement bond, the judgment herein properly quieted title in defendant [Ulrich] subject to that lien." 138 P.2d at 9–10.

In James v. P.C.S. Ginning, Co., 80 Cal.Rptr. 457, 460 (Cal.App. 1969), it was held that a defendant by electing to file a personal action and reducing the indebtedness to a personal judgment made an election of remedies and, by operation of law, effected a waiver of its equitable lien priority over plaintiff's subsequent declaration of homestead. That court said: "The language of Salter has been interpreted to mean that when the creditor elects to recover a personal judgment 'he

[4]The California Code of Civil Procedure, section 726, interpreted in Salter, provides in relevant part: "There can be but one form of action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real property, which action must be in accordance with the provisions of this chapter. . . ."

Although the section refers only to "mortgage," it is applicable to a deed of trust. Bank of Italy v. Bentley, 20 P.2d 940 (Cal. 1933).

loses all right to his security, thereby relegating himself to the position of an ordinary judgment creditor.' [Citation omitted.] We believe this is a correct analysis and, by electing to rely upon a personal judgment, the gin lost all right to a lien priority. . . ."

In Walker v. Community Bank, 518 P.2d 329 (Cal. 1974), the California Supreme Court, citing and relying upon both *Salter* and *James,* held that the sanction takes effect regardless of whether the waived security is owned by the debtor or his successor in interest.

The Lundgrens did not assert NRS 40.430 as an affirmative defense and therefore waived the right to force Lumber Company to exhaust its security. Failure to assert NRS 40.430 as an affirmative defense does not result in a waiver of all protection under that statute and leaves the debtor or his successor in interest free to invoke the sanction aspect of the "one-action" rule. When Lumber Company failed to exhaust its security before bringing an action on the underlying debt it placed into operation the sanction aspect of NRS 40.430 and thereby lost all security rights in the real property regarding the debt in question.

The judgment of the district court is affirmed.

GUNDERSON, C. J., and ZENOFF, MOWBRAY, and THOMPSON, JJ., concur.