JOHN T. KEEVER AND ROBERT H. MOORE, APPELLANTS,
v. NICHOLAS BEERS COMPANY, A CALIFORNIA LIM-
ITED PARTNERSHIP, RESPONDENT.

No. 11024

June 4, 1980                                    611 P.2d 1079

*Stewart & Horton, Ltd.,* and *Cooke, Roberts & Reese,* Reno, for Appellants.

*Guild, Hagen & Clark,* Reno, for Respondent.

510

**OPINION**

By the Court, MOWBRAY, C. J.:

Respondent Nicholas Beers Co. sued appellants Keever and Moore for the balance due on a promissory note which had been secured by a second trust deed on real property. The note made by appellants was due, and partially unpaid. The district court rejected appellants-defendants' contentions below that recovery was barred by the one action rule, NRS 40.430, and by the antiwaiver provision of NRS 40.453; the court rendered judgment for respondent for the unpaid balance of the note plus interest. We reverse.

The note upon which Nicholas Beers Co. (hereinafter Beers) seeks to recover was executed as part of a real estate transaction. Beers held an option to purchase a tract of land which was later to become the Reno Heights subdivision. On May 14, 1974, Beers and Security National Bank entered into an agreement for financing the purchase of the land: the Bank was to

lend Beers over $680,000; Beers was to give the Bank a promissory note secured by a *first* trust deed on the property. Beers and the Bank further agreed that in the event of default on the loan the subdivided property would be sold to a third party, Mason-McDuffie Co., for a specified price of $7,500 per lot, an amount just sufficient to pay back the indebtedness to the Bank. Mason-McDuffie agreed to purchase the lots in a letter dated May 11, 1973; the obligation to purchase was to expire on June 30, 1974. In order to facilitate the transfer of the property to Mason-McDuffie in the event of default, Beers appointed the Bank its agent for the sale and deposited with the Bank an executed request for reconveyance of its interest under the deed of trust.

At this juncture, appellants Keever and Moore entered the transaction, as prospective developers of the property. They agreed to purchase Beers' rights under its option to purchase the property and to step into Beers' position with respect to the note and first deed of trust. In a series of documents dated between June 15 and June 26, 1973, Keever and Moore gave Beers a promissory note (the subject of the present action) secured by a *second* deed of trust on the property; Beers deeded its interest in the property to Keever and Moore; Keever and Moore assumed all of Beers' obligations to the Bank and to Mason-McDuffie; and, in order to facilitate a sale to Mason-McDuffie on default, Keever and Moore adopted Beers' appointment of the Bank as agent for the sale. At one point in the negotiations, the Bank expressed concern over whether, in the event of default, it would be able to sell the property to Mason-McDuffie free of all encumbrances, as specified in its agreement, because of the second deed of trust in favor of Beers. In a letter to the Bank, executed as part of the sale to appellants, Beers agreed to release its lien on the property, created by the second deed of trust, in the event of default, if the Bank would tender to Beers, five days before the contemplated sale to Mason-McDuffie, the remaining lots at the same specified price of $7,500; this letter did not specify a date upon which the agreement would expire. The letter was incorporated by reference into the instrument by which Keever and Moore adopted the appointment of the Bank as agent for the sale to Mason-McDuffie on default; the letter specified that the arrangement would not release Keever and Moore from their liability on the promissory note.

Ultimately, Keever and Moore defaulted on their obligation to the Bank. Although their attempts to keep the project going lasted beyond the June 30, 1974 date upon which the sale agreement between the Bank and Mason-McDuffie was to expire,

those parties agreed to extend their contract for six months. On October 15, 1974, the Bank tendered the remaining lots in the subdivision to Beers at $7,500 per lot, pursuant to their agreement. Beers declined to purchase them, and the Bank then sold them, at the specified price, to one Wilkerson, Mason-McDuffie's nominee. In its letter to the Bank declining the tender of the lots, Beers acknowledged its release of its lien under the second deed of trust on the property.

Keever and Moore had meanwhile defaulted on their promissory note to Beers. Beers brought suit in the district court on the note; Keever and Moore defended on the ground that the note had been secured and that Beers' remedy was to foreclose its interest in the security before seeking judgment against the general assets of the debtors. Keever and Moore further contended that the portions of the agreements which arranged the sale to Mason-McDuffie on default could not be given effect because they constituted waivers of their rights under the laws of the state, under NRS 40.453. They argued that by arranging for the disposal of the security for the note, Beers had lost its right to sue on the note itself. After trial to the court, the district court found that Keever and Moore's agreement to Beers' release of its lien on the property was not a waiver of any right under NRS 40.453, and that Keever and Moore's consent to the release of the lien by Beers had been given in a telephone conversation in November, 1974. The court further found that the arrangement on default had not been entered into by Beers for the purpose of evading the one action rule, NRS 40.430.

[Headnote 1]

We are presented here with a situation in which a creditor has taken security for a debt, while making an arrangement by which, in case of default, the security cannot possibly return any amount of the debt. The creditor thus has no intention of looking to the security for repayment. We are called upon to decide whether suit upon the note evidencing the obligation is permissible under our statutes in these circumstances, and we conclude that it is not.

Chapter 40 of the Nevada Revised Statutes provides a comprehensive scheme of creditor and debtor protection with respect to the foreclosure and sale of real property subject to security interests. *See also* NRS 107.080 *et seq.* NRS 40.430(1), the one action rule, provides, in pertinent part:

> [t]here shall be but one action for the recovery of any debt, or for the enforcement of any right secured by mortgage or lien upon real estate, which action shall be in accordance with the provisions of this section and NRS 40.440 to

40.459, inclusive. In such action, the judgment shall be rendered for the amount found due the plaintiff, and the court shall have power . . . to direct a sale of the encumbered property . . . and apply the proceeds of the sale . . . to the amount due the plaintiff.

NRS 40.459 limits the amount of a deficiency judgment which may be rendered after a judicial sale to the difference between the fair market value of the security at the time of the sale and the amount of the debt. NRS 40.453 provides that it is against the public policy of Nevada "for any document relating to the sale of real property to contain any provision whereby a mortgagor or trustor waives any right secured to him by the laws of this state," and that "[n]o court shall enforce any such provision." We have expressly held the one action rule applicable to deeds of trust as well as mortgages. McMillan v. United Mortgage Co., 82 Nev. 117, 120, 412 P.2d 604, 606 (1966).

Our reading of these statutes indicates that respondent Beers cannot recover on its promissory note because the loss of the security for the obligation was due to its own action. Further, consent of appellants Keever and Moore to the arrangement on default was ineffective to permit suit directly on the promissory note. The right to have a secured creditor proceed against the security before attacking the general assets of the debtor is one of the "right[s] secured . . . by the laws of this state," which the debtor cannot waive in advance. See Paramount Ins. v. Rayson & Smitley, 86 Nev. 644, 651, 472 P.2d 530, 535 (1970) (Thompson, J., concurring). The one action rule requires a creditor to proceed first against the security, unless the debtor waives the benefit of the rule by failing to raise it as a bar to the suit on the debt.[1] The right to waive the security is the debtor's, not the creditor's.[2]

In the instant case, the district court held that the benefit of

---

[1] Our cases have made clear that a debtor may waive the one action rule by failing to assert it as a defense to a suit upon the underlying obligation. Nevada Wholesale Lumber v. Myers Realty, 92 Nev. 24, 28–30, 544 P.2d 1204, 1208 (1976). Hyman v. Kelly, 1 Nev. 179, 186 (1865), holding that a creditor may waive the security, is limited to situations where the debtor does not raise the one action rule as a defense, and does not apply when a waiver of the security is made in a "document relating to the sale of real property," NRS 40.453(1).

[2] We note that, although the note sued upon was technically unsecured at the time suit was brought, see Ferry v. Fisk, 202 P. 964 (Cal.App. 1921), when the loss of the security is procured through waivers prohibited by NRS 40.453, the one action rule may be asserted as a defense by the debtor.

the one action rule had been waived by appellants in November, 1974, in a telephone conversation with one of the partners in respondent, and that the waiver was therefore effective because it was not in a "document relating to the sale of real property," NRS 40.453. This was error.

The instruments executed by respondent, appellants, and the Bank, in which the prearranged disposition of the property on default was agreed upon, clearly bound appellants to accept the sale of the property to Mason-McDuffie at a specified price, rather than a sale under the procedures specified in NRS 40.430 *et seq.* or NRS 107.080 *et seq.* In so doing, appellants waived rights secured by the laws of this state in a "document relating to the sale of real property," which is precisely what the statute forbids our courts to enforce. Appellants' consent to respondent's release of its security interest was therefore ineffective to waive their right under NRS 40.430 to have the secured creditor pursue the security and procure a deficiency judgment for any amount by which the amount of the debt exceeded the fair market value of the security at the time of sale, determined by a judicial hearing, NRS 40.457, or by competitive bidding at a trustee's sale, *see* Bank of Italy v. Bentley, 20 P.2d 940, 942 (Cal. 1933). It was similarly ineffective to waive in advance the right to have any excess from the sale returned to the debtor, NRS 40.440, or applied to the debts owed to junior secured creditors, Sohn v. California Pacific Title Ins. Co., 269 P.2d 223 (Cal. 1954).

Having found that appellants' consent to respondent's purported waiver of its security interest in the property was ineffective, we are faced with the problem posed by respondent's original position as a junior lienor. It is well established that, while the statutory protections apply to sales under senior liens, neither the one action rule nor the fair market value limitation of NRS 40.459 applies to sold out junior lienors, who are free to sue directly on their notes. McMillan v. United Mortgage Co., 84 Nev. 99, 437 P.2d 878 (1968); Roseleaf Corporation v. Chierighino, 378 P.2d 97 (Cal. 1963). Respondent, however, does not have the status of a sold out junior lienor.

The opportunity to sue directly on the obligation afforded to sold out juniors arises from the loss of their liens on the security by operation of the foreclosure or trustee's sale. *See* Sims v. Grubb, 75 Nev. 173, 336 P.2d 759 (1959). Having thus lost

their interests in the security, *through no fault of their own,* sold out junior lienors are treated as unsecured creditors; they are under no duty to redeem the property or buy it at a judicial sale in order to limit the debtor's loss. The procedure under the statutory scheme, however, contemplates that, in the event that the property has risen in value to the point at which the value of the security is greater than the debts secured, the debtor would have the opportunity to attempt refinancing, in order to buy out the foreclosing lienor, or a junior lienor would have an incentive to purchase the property at the sale (thus buying out the senior) and step into the position of the senior lienor, with the opportunity then to foreclose his own lien and acquire the property free of encumbrances. *See generally* J. Hetland, Calif. Real Estate Secured Transactions §§ 6.29–6.33 (CEB ed. 1970).

Under the arrangement in the instant case, because of the agreement with Mason-McDuffie for the sale at a specified price on default, the value of the security could never rise to the point at which it would satisfy the debt for which respondent had taken a security interest. This distinguishes the instant case from one involving sold out junior lienors: in the latter case, the security has *become* valueless, as if it had been destroyed, without fault on the part of the creditor in losing the security. McMillan v. United Mortgage Co., 82 Nev. at 121, 412 P.2d at 606; *see* J. Hetland, Secured Real Estate Transactions § 9.8 (CEB ed. 1974). In this case, the arrangement on default left the security valueless *ab initio* for the purpose of actually securing the debt to respondent. Barbieri v. Ramelli, 23 P. 1086 (Cal. 1890); *see* Rein v. Callaway, 65 P. 63 (Idaho 1901); *cf.* American City Bank v. Zetlen, 61 Cal.Rptr. 311 (Ct.App. 1967) (trustor who assigned agreement to purchase at a specified price to lienor is liable for difference between amount of debt and specified sale price, since both parties knew that deficiency was certain to result on default). It is fundamentally at odds with the policy of our statutes to permit a creditor to take a recorded security interest which encumbers the debtor's property with no intention of looking to the security in case of default. *See* McMillan v. United Mortgage Co., 84 Nev. at 101–102, 437 P.2d at 879.

We hold that when a trustor agrees, in a "document relating to the sale of real property," NRS 40.453(1), to an arrangement on default which ensures that the security will be

insufficient to satisfy the debts which encumber it, and the creditor agrees to release the encumbrance instead of allowing its lien to be removed through foreclosure, NRS 40.430 *et seq.,* or trustee's sale, NRS 107.080 *et seq.,* recovery upon the underlying obligation is impermissible if the debtor raises the one action rule as a defense. We therefore reverse the judgment of the district court.

THOMPSON, GUNDERSON, MANOUKIAN, and BATJER, JJ., concur.