**WHIRLPOOL FINANCIAL CORPORATION, a Delaware corporation, Plaintiff/counter-defendant,**

v.

**Jean SEVAUX, Defendant/counter-plaintiff.**

**No. 93 C 4725.**

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 7, 1994.

---

Richard Paul Glovka, David M. Simon, W. Scott Nehs, Wildman, Harrold, Allen & Dixon, Chicago, IL, for plaintiff.

Alan Hugh Cooper, Conde, Stoner & Killoren, Rockford, IL, Thomas E. Engel, James G. McCarney, Michael I. Verde, Engel & McCarney, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Whirlpool Financial Corporation ("WFC") brought this complaint against Jean Sevaux ("Sevaux") for his alleged failure to pay on a note. Sevaux has responded with six affirmative defenses and five counterclaims and demanded a jury trial. Presently before this Court is WFC's motion to strike Sevaux's demand for trial by jury. For the reasons set forth below, we deny WFC's motion.

### I. Background [1]

Beginning in 1990 WFC, a Delaware corporation with its principal place of business

---

1. We incorporate the facts set out in our prior order of August 24, 1994, denying WFC's motion to dismiss Sevaux's counterclaims and strike his affirmative defenses. Additional facts are gleaned from Sevaux's counterclaims and the parties' briefs in support of and in opposition to the instant motion.

in Michigan, retained Sevaux to identify and refer investment opportunities to the company. One of the companies referred to WFC by Sevaux was Raymond de Venezuela ("Raymond"), a Venezuelan organization owned solely by Sevaux.

In November 1991, WFC representatives met with Sevaux and Raymond's counsel, Benner Turner, in Venezuela concerning an equity position for WFC in Raymond. At this time WFC orally agreed to purchase a 50% equity interest in Raymond for $17 million. Additionally, WFC agreed to advance $1 million to Raymond if Sevaux would advance $1 million of his own funds to the company.

In December 1991, WFC representatives and Sevaux discussed the execution of a Term Loan Promissory Note ("Note") by Sevaux in order to secure the $1 million to be advanced by WFC. Sevaux alleges that WFC assured him the Note was an interim measure, that he would not be required to make payment on it, and that the proceeds would be converted to a portion of WFC's equity investment in Raymond. He further alleges that these discussions concerned the mechanics of executing the Note, not substantive negotiations on its terms. WFC had a copy of the six-page Note sent to Sevaux. Among its many terms, the Note contained a section for filling in the number of percentage points above prime at which interest would accrue, and a clause stating:

> ... BORROWER HEREBY IRREVOCA-BLY AND UNCONDITIONALLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY SUIT, ACTION, PRO-CEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATED TO THIS NOTE.

Sevaux alleges that he inserted the applicable interest rate provided by WFC, signed and dated the Note on or about December 20, 1991, and returned it to WFC.

On July 28, 1992, WFC informed Sevaux that it would not be investing any money into Raymond. Although payment on the Note was originally due July 1, 1992, the parties agreed to extend the time for repayment to November 30, 1992, and later to June 30, 1993. Sevaux failed to repay the Note on the June 30 maturity date.

On August 5, 1993, WFC filed this action for payment on the Note. On November 4, 1993 Sevaux filed his Answer and Counterclaims against WFC. Sevaux pleaded six affirmative defenses: (1) fraud in the inducement, (2) fraud under 815 ILCS 105/10, (3) estoppel by breach of fiduciary duty, (4) constructive fraud, (5) failure of consideration, and (6) want of consideration under 815 ILCS 105/9. He also pleaded five counterclaims: (1) fraud, (2) breach of contract, (3) promissory estoppel, (4) breach of fiduciary duty and (5) constructive fraud. Essentially, Sevaux alleges that WFC falsely represented an intent to invest $17 million in Raymond, and that in reliance on that promise Sevaux signed the $1 million Note and invested $1 million of his own money into Raymond. WFC is also alleged to have falsely represented that Sevaux would never have to pay on the Note and falsely promised that the $17 million investment would extinguish Sevaux's obligation thereunder. Sevaux asserts that because of WFC's scheme he forewent other financial options to his own and Raymond's financial detriment. On December 14, 1993, after WFC filed a motion to dismiss Sevaux's counterclaims and strike affirmative defenses, Sevaux filed an Amended Answer and Counterclaims along with a Demand for Trial by Jury. Although the Amended Answer and Counterclaims contained further factual detail, they essentially tracked the earlier pleadings and WFC moved to dismiss them.[2] As of this time, WFC has not filed a reply to Sevaux's counterclaims.

## II. Discussion

At issue is whether Sevaux timely requested a jury trial in this matter and whether he waived his right to a jury by virtue of the waiver provision in the Note. We address these issues in seriatim.

### A. Timely Demand

 The Federal Rules of Civil Procedure provide, in pertinent part, that

> [a]ny party may demand a trial by jury of any issue triable of right by a jury by (1)

---

**2.** WFC's motions were denied in our August 24, 1994 order.

serving upon the other parties a demand therefore in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed at such issue, and (2) filing the demand [with the court] as required by Rule 5(d).

Fed.R.Civ.P. 38(b). Failure by a party to make a timely demand will be construed as a waiver of any right to trial by a jury. Fed. R.Civ.P. 38(d); *Communications Maintenance, Inc. v. Motorola, Inc.*, 761 F.2d 1202, 1208 (7th Cir.1985). The "last pleading directed at such issue" is the final pleading which contests an issue that is subject to jury trial. *Early v. Bankers Life & Casualty Co.*, 853 F.Supp. 268, 270 (N.D.Ill.1994). "Generally, such pleading will be an answer to a complaint or a reply to a counterclaim.... A motion to dismiss a complaint, however, is not considered a 'last pleading' directed to an issue triable by a jury." *Id.* (citations omitted); *McCarthy v. Bronson*, 906 F.2d 835, 840 (2d Cir.1990) (same), *aff'd*, 500 U.S. 136, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991). If the counterclaim raises the same issues as the answer, a jury demand within ten days of the reply will be effective for all issues raised by the answer and counterclaim. 9 Wright & Miller, *Federal Practice and Procedure* § 2320, at 93 (1971). However, where the counterclaim raises new issues, a demand within ten days of the reply will be effective as to those issues but not as to the issues addressed in the answer and complaint. *Id.*

■ Sevaux's jury demand was filed prior to WFC's reply to his counterclaims, and was therefore timely.[3] *See Stewart v. RCA Corp.*, 790 F.2d 624, 629–630 (7th Cir.1986) (time to demand jury had not run since defendant had not yet answered). Although some of the factual issues raised by Sevaux in his counterclaims were not addressed in WFC's complaint, they are inextricably intertwined with WFC's allegation that he wrong-

fully failed to repay the Note.[4] Therefore, we find that Sevaux's jury demand was timely as to all issues.

### B. Waiver

■ Although the Seventh Amendment to the United States Constitution guarantees the right to a jury trial in civil cases, this right is waivable. *Stewart v. RCA Corp.*, 790 F.2d 624, 630 (7th Cir.1986); *Bonfield v. AAMCO Transmissions, Inc.*, 717 F.Supp. 589, 594 (N.D.Ill.1989). However, such a waiver must be made knowingly and voluntarily. *In re Reggie Packing Co.*, 671 F.Supp. 571, 573 (N.D.Ill.1987). Indeed, "as the right of jury trial is fundamental, courts indulge in every reasonable presumption against waiver." *Aetna Insurance Co. v. Kennedy*, 301 U.S. 389, 393, 57 S.Ct. 809, 812, 81 L.Ed. 1177 (1937). The factors to consider in determining whether a contractual waiver of the right to jury trial was entered into knowingly and voluntarily include: (1) the parties' negotiations concerning the waiver provision, if any, (2) the conspicuousness of the provision, (3) the relative bargaining power of the parties and (4) whether the waiving party's counsel had an opportunity to review the agreement. *Heller Financial, Inc. v. Finch–Bayless Equip. Co.*, No. 90 C 1672, 1990 WL 77500 (N.D.Ill. May 31, 1990), *reconsideration denied*, 1990 WL 103232 (N.D.Ill. July 17, 1990); *Bonfield*, 717 F.Supp. at 595–96; *In re Reggie*, 671 F.Supp. at 573–74. Although this circuit has not decided which party bears the burden of proving the validity of an alleged waiver, it is clear in this case that Sevaux did not voluntarily and knowingly waive his right to a jury trial.

First, Sevaux asserts (and WFC does not deny) that the parties never discussed the waiver provision in the Note. *See Bonfield*, 717 F.Supp. at 595 (waiver presumed in part

---

**3.** Indeed, the "last pleading" on the issues raised in the answer and counterclaims has not yet been filed by WFC.

**4.** WFC suggests that since Sevaux's amended counterclaims (which were filed more than ten days after his original counterclaims) do not raise any new issues, he should somehow not be entitled to a jury trial. Although such counter-

claims would not entitle him to a new ten day period had the "last pleading directed toward the issue" been filed, *see Motorola, Inc.*, 761 F.2d at 1208; *G. Bauknecht GmbH v. Electronic Relays, Inc.*, 569 F.Supp. 404, 414 (N.D.Ill.1983), this fact is irrelevant to our conclusion because the ten day period had not yet begun to run when Sevaux made his demand.

because of express discussion of waiver provision). Sevaux did not draft the terms of the Note, but rather, it was prepared by WFC's counsel and mailed to Sevaux for his signature. "Where a waiver provision is set out in an unnegotiated form contract that is not susceptible to negotiation, it is presumed that there was not a knowing waiver of the right to a jury trial." *Heller Financial,* 1990 WL 77500, at *2 (citing *Dreiling v. Peugeot Motors of America, Inc.,* 539 F.Supp. 402, 403 (D.Colo.1982)).[5] WFC's Vice President Joel Webber asserts that Sevaux filled in the interest rate in the Note. While we accept this assertion as true, it does not establish that Sevaux actually had some power to determine what the interest rate term would be. Similarly, Webber states that the parties "negotiated with respect to" the Note, but does not allege that the jury waiver provision was brought to the attention of Sevaux. The absence of specific discussions or negotiations concerning the jury waiver provision militates against a finding of waiver. *See In re Reggie,* 671 F.Supp. at 573 (waiver found due to party's opportunity to negotiate and alter two provisions).

Second, although the provision was printed in capital letters, it was not so conspicuous as to insure a knowing and voluntary waiver by Sevaux. *Cf. Heller Financial,* 1990 WL 103232, at *1 ("Although the jury waiver provision is set out in slightly bolder type than the remainder of the agreement, it is not so obvious as to rebut any claim that it could not be seen."). Indeed, the waiver constituted three lines in a six page form loan agreement. Given Sevaux's lack of familiarity with the American civil jury system, we cannot conclude that the provision was conspicuousness enough to mandate a finding of waiver.

Third, WFC had significantly more bargaining power than Sevaux with regard to this transaction. To be sure, Sevaux was a successful businessman. However, he alleges (and WFC does not dispute) that his company desperately needed an infusion of cash. Indeed, when the deal with WFC fell through, Sevaux alleges that he sustained substantial losses. The disparate bargaining positions of Sevaux and WFC weigh against a finding of waiver.

Finally, it is not disputed that Raymond, and Sevaux as its sole shareholder, were represented by Benner Turner during the meetings in November 1991. However, there is no indication that Turner, a lawyer practicing Venezuela, acted as Sevaux's personal counsel in France; indeed, Sevaux vehemently asserts that he was not represented by counsel with regard to the execution of the Note. Thus, as distinguished from *In re Reggie,* 671 F.Supp. at 573, where the party employed an attorney to review the agreement, and *Bonfield,* 717 F.Supp. at 595–96, where the party had a personal lawyer but choose not have him review the agreement, Sevaux did not have the opportunity to have counsel evaluate the Note. *See Heller Financial,* 1990 WL 77500, at *2 (no waiver found in part because party did not consult with an attorney when signing contract).

Considering all these factors in their entirety, as well as the presumption against finding waiver, we conclude that Sevaux's signing of the Note did not waive his right to a jury trial.

### III. Conclusion

For the reasons set forth above, plaintiff WFC's motion to strike Sevaux's jury demand is denied. It is so ordered.

---

5. In addressing this factor, WFC only claims that the Note "does not appear to be pre-printed," WFC's Reply Memorandum in Support of Motion to Strike Jury Demand, at 3, but fails to make any more specific statement.