LOWE ENTERPRISES RESIDENTIAL PARTNERS, L.P., A CALIFORNIA LIMITED PARTNERSHIP; CALIFORNIA INDEMNITY INSURANCE COMPANY; AND COMMERCIAL CASUALTY INSURANCE COMPANY, PETITIONERS, v. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, AND THE HONORABLE MICHAEL CHERRY, DISTRICT JUDGE, RESPONDENTS, AND ROBERT V. JONES, IN HIS INDIVIDUAL CAPACITY AND IN HIS CAPACITY AS TRUSTEE OF THE SCOTSMAN TRUST; THE ROBERT V. JONES COMPANY; THE ROBERT V. JONES CORPORATION, AND THE SANCTUARY, LTD., REAL PARTIES IN INTEREST.

No. 37003

February 13, 2002                              40 P.3d 405

*Smith Larsen & Wixom,* Las Vegas; *Irell & Manella, LLP,* and *Andra Barmash Greene,* Newport Beach, California, for Petitioner Lowe Enterprises.

*Schreck Brignone Godfrey* and *James J. Pisanelli* and *Nikki L. Baker,* Las Vegas, for Petitioners California Indemnity Insurance Company and Commercial Casualty Insurance Company.

*James J. Lee,* Las Vegas, for Real Parties in Interest.

## OPINION

By the Court, Agosti, J.:

In October 1996, The Robert V. Jones Corporation contracted to purchase certain real property from a third party not related to this proceeding. Thereafter, The Sanctuary, Ltd. ("Sanctuary") was created to develop a residential community project on the property. The petitioner, Lowe Enterprises Residential Partners, L.P. ("Lowe"), made a loan to Sanctuary for the development of the project. In connection with the loan, the parties executed various loan documents. Additionally, Robert V. Jones, individually, The Robert Jones Company and The Robert V. Jones Corporation executed a payment guaranty to "absolutely and unconditionally guarantee[ ]" the loan.

The relations between the parties soured when Sanctuary, Robert V. Jones, The Robert V. Jones Company and The Robert V. Jones Corporation (collectively "real parties in interest") allegedly defaulted on the loan and the payment guaranty. Consequently, Lowe filed suit in district court against real parties in interest alleging breach of contract, unjust enrichment, fraud and negligent misrepresentation. Real parties in interest counter-claimed, cross-claimed and demanded a jury trial.

Lowe filed a motion to strike the jury demand, arguing that real parties in interest were precluded from making a jury demand because they "knowingly, voluntarily and specifically waived their right to try this case before a jury" in the loan documents and payment guaranty. Lowe set forth the following language contained in section 1.26(b) of the loan documents:

> BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THE INDEBTEDNESS SECURED HEREBY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, TRUSTEE OR BORROWER, OR ANY OF THEIR DIREC-TORS, OFFICERS, PARTNERS, MEMBERS, EMPLOY-EES, AGENTS OR ATTORNEYS, OR - ANY OTHER PERSONS AFFILIATED WITH LENDER, TRUSTEE OR BORROWER, IN EACH O[F] THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

Lowe also cited section 6.1.9 of the payment guaranty which reads as follows:

> Guarantor hereby waives to the extent permissible by law . . . the right to trial by jury in any litigation arising out of, relating to, or connected with this Guaranty, it being acknowledged by each Guarantor that each Guarantor is a professional developer engaged and knowledgeable in sophis-ticated commercial real estate transactions, and that each Guarantor makes this waiver of trial by jury knowingly and voluntarily and only after consultation with sophisticated legal counsel of Guarantors' choosing.

Also, section 6.2 of the payment guaranty provided that "[i]t is agreed between Guarantor and Lender that the foregoing waivers are of the essence of the Loan transaction and that, but for this Guaranty and such waivers, Lender would decline to make the

Loan.'' Therefore, Lowe urged the district court to strike the jury demand because real parties in interest contractually waived their right to a trial by jury.[1] `

Real parties in interest argued that the jury trial waivers contained in the various loan documents were unenforceable as a matter of law under NRS 40.453 which provides that it is against public policy for any document relating to the sale of real estate to contain any provision that waives any right secured to a mortgagor or guarantor by Nevada law. Accordingly, because the various loan documents related to the financing and sale of real property, real parties in interest asserted that NRS 40.453 precluded the district court from enforcing the contractual jury trial waivers.

Petitioners finally argued that the waivers were enforceable because real parties in interest were sophisticated borrowers who knowingly, voluntarily and unambiguously waived their jury trial rights. Petitioners also argued that real parties in interest misconstrued NRS 40.453 beyond the statute's intended purpose, namely, the protection of rights under Nevada's anti-deficiency legislation.

On October 5, 2000, without hearing arguments from the parties, and without addressing the arguments raised by the parties in their briefs, the district court denied petitioners' motion to strike the jury demand. The district court reasoned that the right to a jury trial was too important to be precluded by the waiver. Accordingly, the district court entered an order denying petitioners' motion to strike the jury demand.

Petitioners now seek a writ of mandamus from this court compelling the district court to strike real parties in interest's jury demand.

### *Extraordinary review is available in this case*

Under NRS 34.160, this court may issue a writ of mandamus to compel the performance of an act that the law requires as a duty resulting from an office, trust or station.[2] Extraordinary relief will only issue where ''there is not a plain, speedy and ade-

---

[1]Petitioners California Indemnity Insurance Company (''Cal Indemnity'') and Commercial Casualty Insurance Company (''Commercial Casualty'') joined in Lowe's motion to strike the jury demand. Both Cal Indemnity and Commercial Casualty loaned money to real parties in interest using loan documents that contained jury waivers. Cal Indemnity and Commercial Casualty were originally brought into the case as third-party defendants.

[2]NRS 34.160 provides:

> The writ may be issued by the supreme court, a district court or a judge of the district court, to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station; or

quate remedy in the ordinary course of law."[3] Petitioners argue that if they had to wait to challenge the district court's denial of their motion to strike the jury demand on appeal, petitioners would have to show that they were "actually prejudiced" by the district court's grant of a jury trial. The petitioners contend that actual prejudice resulting from the grant of a jury trial is too difficult a burden to meet upon appellate review. Accordingly, the petitioners seek a writ of mandamus pursuant to NRS 34.160. Petitioners assert that such extraordinary review is warranted because no other plain, speedy or adequate remedy exists.

In support of this argument, petitioners cite to this court's decision in *El Cortez Hotel, Inc. v. Coburn*.[4] In *El Cortez,* we held that in order to establish grounds for reversal, the appellant must "show that the errors complained of would have so substantially affected its rights that it could be reasonably assumed that if it were not for the alleged errors, a different result might reasonably have been expected."[5] Accordingly, petitioners assert that extraordinary review is available because it would be almost impossible for them to show that the grant of a jury trial substantially affected their rights.[6]

Although we have not addressed the issue of whether extraordinary review is available when a district court denies a party's motion to strike a jury demand, we note that other jurisdictions have addressed the issue.[7] In *Beasley v. Wells Fargo Bank,* the

---

to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person. When issued by a district court or a judge of the district court it shall be made returnable before the district court.

[3]NRS 34.170.

[4]87 Nev. 209, 213, 484 P.2d 1089, 1091 (1971).

[5]*Id.; accord Olivero v. Lowe,* 116 Nev. 395, 402, 995 P.2d 1023, 1028 (2000) (stating that reversal of verdict rendered in bench trial was not warranted because the error would not have affected the outcome of trial).

[6]*See Truckee-Carson Irr. Dist. v. Wyatt,* 84 Nev. 662, 667, 448 P.2d 46, 50 (1968) (stating that "[t]he burden is upon the appellant to show the probability of a different result").

[7]*See Ex parte Wells,* 582 So. 2d 1134, 1136-37 (Ala. Civ. App. 1991) (holding that respondent had no right to a jury trial and that a writ of mandamus was warranted because the trial court abused its discretion in not granting petitioner's motion to strike the jury demand); *Trizec Properties v. Superior Court,* 280 Cal. Rptr. 885, 886-87 (Ct. App. 1991) (holding that a writ of mandate was warranted to direct the trial court to set aside its order denying petitioner's motion to strike real parties in interest's request for a jury trial because real parties in interest waived their right to a jury trial in the parties' commercial lease agreement); *Pacific Telephone and Telegraph Co. v. Superior Court,* 72 Cal. Rptr. 177, 180 (Ct. App. 1968) (holding that a writ of prohibition was warranted because the trial court improperly granted a jury trial in a civil contempt case).

California Court of Appeals stated that extraordinary writ proceedings were an expedient way to resolve such an issue.[8] Additionally, in *Ex parte SouthTrust Bank of Alabama, N.A.*, the Alabama Supreme Court issued a writ of mandamus directing the trial court to grant the defendant's motion to strike the plaintiff's jury demand.[9] The court concluded that since the plaintiff's claims were equitable in nature, writ relief was appropriate because the plaintiff was not entitled to a jury trial under Alabama law.[10]

Similarly, we conclude that extraordinary review is available in this case because "there is not a plain, speedy and adequate remedy in the ordinary course of law."[11] If petitioners had to wait to challenge the district court's denial of their motion to strike the jury demand on appeal, petitioners would have too difficult a burden to meet upon appellate review. The burden would be too difficult because Nevada case law requires appellants to show that the error complained of substantially affected their rights. Further, Nevada case law requires appellants to show that, in the absence of such error, the outcome of the case would have been different.

Additionally, extraordinary review is available because the validity of contractual jury trial waivers in Nevada is a matter of great importance. We have previously stated that " 'where an important issue of law needs clarification and public policy is served by this court's invocation of its original jurisdiction, our consideration of a petition for extraordinary relief may be justified.' "[12] Clearly, the validity of contractual jury trial waivers is an important issue of Nevada law that needs clarification, and public policy would be served by our invocation of original jurisdiction.

### Contractual jury trial waivers are valid and enforceable in Nevada

The issue of whether a contractual jury trial waiver is valid and enforceable in Nevada is one of first impression for this court. Most courts addressing the issue have held that such waiver provisions are enforceable if they are knowingly, voluntarily and intentionally made. Various federal circuit courts have determined that the constitutional right to a jury trial in civil cases may be knowingly and intentionally waived.[13] For instance, the Fourth

---

[8]1 Cal. Rptr. 2d 446, 453 (Ct. App. 1991).

[9]679 So. 2d 645, 649 (Ala. 1996).

[10]*Id.*

[11]NRS 34.170.

[12]*Falcke v. Douglas County*, 116 Nev. 583, 586, 3 P.3d 661, 662-63 (2000) (quoting *Business Computer Rentals v. State Treas.*, 114 Nev. 63, 67, 953 P.2d 13, 15 (1998)).

[13]*See Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir. 1988) (stating that contractual jury trial waivers are enforceable if they

Circuit Court of Appeals stated that ''[t]he seventh amendment right [to a trial by jury] is of course a fundamental one, but it is one that can be knowingly and intentionally waived by contract.''[14] Additionally, federal district courts have overwhelmingly concluded that such waivers are valid and enforceable if knowingly, voluntarily and intentionally made.[15] Finally, many state courts have reached similar conclusions.[16] The underlying policies favor-

are entered into knowingly, voluntarily and intentionally because they are ''neither illegal nor contrary to public policy''); *Leasing Service Corp. v. Crane,* 804 F.2d 828, 832 (4th Cir. 1986) (stating that the right to a jury trial in a civil case can be knowingly and intentionally waived by contract); *K.M.C. Co., Inc. v. Irving Trust Co.,* 757 F.2d 752, 755 (6th Cir. 1985) (stating that ''the constitutional right to jury trial may only be waived if done knowingly, voluntarily and intentionally''); *National Equipment Rental, Ltd. v. Hendrix,* 565 F.2d 255, 258 (2d Cir. 1977) (stating that the right to a jury trial ''can only be relinquished knowingly and intentionally'').

[14]*Leasing Service Corp.,* 804 F.2d at 832.

[15]*See Morgan Guar. Trust Co. of New York v. Crane,* 36 F. Supp. 2d 602, 603 (S.D.N.Y. 1999) (stating that ''[t]he parties to a contract may, by prior written agreement entered into knowingly and voluntarily, waive the right to a jury trial''); *Cooperative Finance Ass'n, Inc. v. Garst,* 871 F. Supp. 1168, 1171 (N.D. Iowa 1995) (stating that a party may contractually waive its right to jury trial if the waiver provision was knowingly and voluntarily made); *Whirlpool Financial Corp. v. Sevaux,* 866 F. Supp. 1102, 1105 (N.D. Ill. 1994) (stating that contractual jury trial waivers can be enforceable); *Phoenix Leasing Inc. v. Sure Broadcasting, Inc.,* 843 F. Supp. 1379, 1384 (D. Nev. 1994) (holding that the right to a jury may be contractually waived as long as the waiver is knowingly and voluntarily executed); *Smyly v. Hyundai Motor America,* 762 F. Supp. 428, 429 (D. Mass. 1991) (stating that contractual jury trial waivers are enforceable if they are knowingly and intentionally made); *Smith-Johnson Motor Corp. v. Hoffman Motors Corp.,* 411 F. Supp. 670, 677 (E.D. Va. 1975) (stating that contractual jury trial waivers are enforceable because they are ''neither illegal nor contrary to public policy'').

[16]*See Mall, Inc. v. Robbins,* 412 So. 2d 1197, 1199 (Ala. 1982) (holding that a contractual jury trial waiver contained in a lease agreement is enforceable if the waiver language is conspicuous, the bargaining power of the parties is equal and the waiver was intelligently and knowingly made); *L & R Realty v. Connecticut Nat. Bank,* 715 A.2d 748, 755 (Conn. 1998) (stating that ''jury trial waivers entered into in advance of litigation are enforceable where there is clear evidence of an intent to waive''); *ST Systems v. Maryland National Bank,* 684 A.2d 32, 39 (Md. Ct. Spec. App. 1996) (noting that parties can contractually waive their right to a jury trial); *Chase Commercial Corp. v. Owen,* 588 N.E.2d 705, 709 (Mass. App. Ct. 1992) (stating that contractual jury trial waivers are enforceable as long as the waiver language is clear and legible); *Malan Realty Investors, Inc. v. Harris,* 953 S.W.2d 624, 627 (Mo. 1997) (stating that contractual jury trial waivers are enforceable as long as ''the waiver was knowingly and voluntarily or intelligently made''); *Barclays Bank v. Heady Elec. Co.,* 571 N.Y.S.2d 650, 652 (App. Div. 1991) (stating that contractual jury trial waivers are valid and enforceable, unless the party attacking their validity can show adequate basis to deny enforcement); *TS 1 Partnership v. Allred,* 877 P.2d 156, 160-61 (Utah Ct. App. 1994) (stating, without explanation, that contractual jury trial waivers are enforceable); *see also* Jay M. Zitter, *Contractual Jury Trial Waivers in State Civil Cases,*

ing the enforcement of contractual jury trial waivers include the freedom to contract and concerns of judicial economy.[17]

Although many federal circuit courts, federal district courts and state courts have held that contractual jury trial waivers are valid and enforceable, at least one jurisdiction has held to the contrary. In *Bank South, N.A. v. Howard,* the Supreme Court of Georgia held that pre-litigation contractual jury trial waivers are unenforceable in Georgia because such waivers are not provided for by the state constitution and statutes.[18] The court reasoned that the governing state's statutes contemplated that litigation had to be underway before a party could waive the right to a jury trial.[19] The court likened the waiver of a jury trial to a confession of judgment because both involved giving up valuable rights.[20] Accordingly, the court decided that contractual jury trial waivers, entered into prior to the commencement of litigation, were unenforceable in Georgia.[21]

The dissenting opinion in *Bank South, N.A.* found fault with the majority for failing to recognize that the right to a jury trial may be waived by a party prior to the commencement of litigation.[22] The dissent stated that parties should be free " 'to contract on any terms and about any subject matter they so desire.' "[23] The dissent also noted that many other jurisdictions permit pre-litigation contractual jury trial waivers.[24] Moreover, the dissent criticized the majority for analogizing waivers of jury trial with confessions of judgments.[25] The dissent argued that the two are not analogous because a confession of judgment is " 'the substitute for a verdict' " which cannot be taken away until suit is commenced.[26] Conversely, a waiver of jury trial is not a substitute for a verdict;

---

42 A.L.R. 5th 53-135 (1996) (exhaustive annotation discussing state civil cases in which the courts have considered the validity of pre-litigation contractual jury trial waivers).

[17]*See Trizec Properties v. Superior Court,* 280 Cal. Rptr. 885, 887 (Ct. App. 1991) (holding that the enforcement of contractual jury trial waivers best serves the needs of the contracting parties and the overburdened court system).

[18]444 S.E.2d 799, 800 (Ga. 1994).

[19]*Id.*

[20]*Id.*

[21]*Id.*

[22]*Id.* at 800-02 (Sears-Collins, J., dissenting).

[23]*Id.* at 801 (quoting *Duffett v. E & W Properties, Inc.,* 430 S.E.2d 858, 860 (Ga. Ct. App. 1993)).

[24]*Id.*

[25]*Id.*

[26]*Id.* (quoting *Information Buying Co. v. Miller,* 161 S.E. 617, 619 (Ga. 1931)).

it merely limits litigation of the issue to a bench trial.[27] Thus, the dissent concluded that pre-litigation contractual jury trial waivers should be permitted in Georgia.[28]

We agree with the dissent's analysis rather than the majority's. Moreover, we note that several commentators have criticized the majority's position because Georgia is the only jurisdiction to hold that pre-litigation contractual jury trial waivers are invalid and unenforceable.[29] We adopt the more reasoned position of the numerous jurisdictions that hold that contractual jury trial waivers can be enforceable. Contractual jury trial waivers are enforceable when they are entered into knowingly, voluntarily and intentionally. Furthermore, in accordance with Nevada's public policy favoring the enforceability of contracts,[30] we conclude that contractual jury trial waivers are presumptively valid unless the challenging party can demonstrate that the waiver was not entered into knowingly, voluntarily or intentionally.[31] Finally, when determining whether a waiver was knowingly, voluntarily and intentionally made, we adopt the position of the court in *Whirlpool Financial Corp. v. Sevaux,* which stated:

---

[27]*Id.*

[28]*Id.*

[29]Edward Wood Dunham, *Enforcing Contract Terms Designed to Manage Franchisor Risk,* 19 Franchise L.J. 91, 96 (2000) (noting that the court's decision in *Bank South, N.A.* is "an extreme and, to date, unusual position"); E. Michelle Robinson, Note, *Pre-Litigation Contractual Waivers of the Right to a Jury Trial Are Unenforceable Under Georgia Law,* 46 Mercer L. Rev. 1565, 1573 (1995) (criticizing the court's holding in *Bank South, N.A.* and urging the Georgia Legislature to overturn the court's decision through legislation); Kimberly A. Stout, Note, *No Prelitigation Contractual Waiver of Jury Trial: Bank South, N.A. v. Howard, A Step Backward for Georgia,* 12 Ga. St. U. L. Rev. 929, 937 (1996) ("The reasoning of the majority's opinion is faulty in two respects. First, neither the Georgia Constitution nor the Georgia Code prohibit[s] jury trial waiver provisions. Second, jury trial waiver provisions are not analogous to confessions of judgment. In contrast, jury trial waiver provisions are similar to arbitration provisions and choice of forum clauses, which are both permissible under state law.").

[30]*See Miller v. A & R Joint Venture,* 97 Nev. 580, 582, 636 P.2d 277, 278 (1981) (holding that an exculpatory lease provision was a valid exercise of the freedom to contract); *Hansen v. Edwards,* 83 Nev. 189, 192, 426 P.2d 792, 793 (1967) (noting the public's interest in the enforcement of contractual rights and obligations).

[31]We note that other courts have also placed the burden of proof on the challenging party. *See, e.g., L & R Realty,* 715 A.2d at 755 (holding that contractual jury trial waivers are presumptively enforceable); *Barclays Bank,* 571 N.Y.S.2d at 652 (holding that contractual jury trial waivers will be deemed valid and enforceable unless the challenging party can show an adequate basis for denying their enforcement). Placing the burden of proof on the challenging party is also in accord with our decision in *Phillips v. Parker,* 106 Nev.

The factors to consider in determining whether a contractual waiver of the right to jury trial was entered into knowingly and voluntarily include: (1) the parties' negotiations concerning the waiver provision, if any, (2) the conspicuousness of the provision, (3) the relative bargaining power of the parties and (4) whether the waiving party's counsel had an opportunity to review the agreement.[32]

Accordingly, we conclude that a court may consider, but is not limited to, the above factors when determining whether a jury trial waiver should be enforced.

In light of our conclusion that jury trial waivers are enforceable, we believe it is prudent to clarify the scope of this holding in relation to two previous decisions made by this court. First, for purposes of clarity, we note that our decision in *O'Banion v. Simpson* was limited to determining the constitutionality of a legislative regulation governing the waiver of one's right to a jury trial.[33] In *O'Banion* we upheld a party's waiver of his right to a jury trial because the waiver satisfied the applicable waiver statute.[34] However, we do not interpret *O'Banion* as precluding the waiver of one's right to a jury trial through other means, such as contractual jury trial waivers. Second, we note that our recent decision in *Executive Management v. Ticor Title Insurance Co.* concerned the discretion of the district court to grant relief from jury trial waivers made during the course of litigation, not with jury trial waivers entered into between the parties prior to the start of litigation.[35] Jury trial waivers entered into prior to the start of litigation are distinguishable because they do not implicate the district court's discretionary powers for managing the cases that come before it. Instead, pre-litigation jury trial waivers are grounded in the parties' freedom to contract and their corresponding ability to allocate risk.

Here, the parties do not dispute the conspicuousness of the waivers or the fact that their loan documents contained these waivers. Additionally, real parties in interest have not contested the waiver as having been involuntarily obtained. Although real parties in interest have asserted that they were of unequal bar-

---

415, 417, 794 P.2d 716, 718 (1990). In *Phillips,* we held that the strong public policy in favor of arbitration provisions serves to create a presumption that such provisions are enforceable. *Id.*

[32]*Sevaux,* 866 F. Supp. at 1105.

[33]44 Nev. 188, 193-95, 191 P. 1083, 1084-85 (1920).

[34]*Id.*

[35]118 Nev. 46, 38 P.3d 872 (2002).

gaining power,[36] real parties in interest were represented by counsel and had prior experience in real estate. Accordingly, we conclude that the real parties in interest knowingly, voluntarily and intentionally waived their right to a jury trial.

*NRS 40.453 does not preclude waiver of the right to trial by jury*

We conclude that NRS 40.453 does not preclude waiver of the right to trial by jury. NRS 40.453 provides:

Except as otherwise provided in NRS 40.495:

1. It is hereby declared by the legislature to be against public policy for any document relating to the sale of real property to contain any provision whereby a mortgagor or the grantor of a deed of trust or a guarantor or surety of the indebtedness secured thereby, waives any right secured to him by the laws of this state.

2. A court shall not enforce any such provision.

We have previously stated that " '[w]here the language of a statute is plain and unambiguous, and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself.' "[37] But in *Roberts v. State of Nevada,* we noted that "[w]hen a statute is ambiguous, 'the plain meaning rule has no application.' "[38] Accordingly, when the plain meaning rule is inapplicable, "the statute can be construed ' "in line with what reason and public policy would indicate the legislature intended." ' "[39] Finally, we have held that statutes should be interpreted to avoid absurd or unreasonable results.[40]

The language of NRS 40.453 is ambiguous to the extent that a strict application of the extremely broad language of NRS 40.453 would lead to an absurd result. In particular, if the legislature actually intended to prohibit the waiver of any right secured by law, then such things as arbitration agreements,[41] forum selection

---

[36]The record, to the contrary, supports the trial court's determination that the real parties in interest are sophisticated and experienced business people.

[37]*State, Div. of Insurance v. State Farm,* 116 Nev. 290, 293, 995 P.2d 482, 485 (quoting *State v. Jepsen,* 46 Nev. 193, 196, 209 P. 501, 502 (1922)).

[38]104 Nev. 33, 37, 752 P.2d 221, 223 (1988) (quoting *McKay v. Bd. of Supervisors,* 102 Nev. 644, 649, 730 P.2d 438, 442 (1986)).

[39]*Id.* (quoting *McKay,* 102 Nev. at 649, 730 P.2d at 442) (quoting *Robert E. v. Justice Court,* 99 Nev. 443, 445, 664 P.2d 957, 959 (1983))).

[40]*Alsenz v. Clark Co. School Dist.,* 109 Nev. 1062, 1065, 864 P.2d 285, 286 (1993).

[41]*See* NRS 38.035 (providing for the enforceability of arbitration agreements).

clauses[42] and choice-of-law provisions[43] would be unenforceable. The Nevada Legislature could not have intended such a result when it enacted NRS 40.453.

NRS 40.453 was enacted in 1969 as part of Assembly Bill 493.[44] On March 13, 1969, a hearing was held before the Assembly Committee on Judiciary.[45] At the hearing, the committee discussed, among other things, the passage of A.B. 493. During that hearing, a concern arose that the only way to safeguard the anti-deficiency protections created under A.B. 493 would be to prohibit the waiver of those protections, otherwise, lenders would merely require their borrowers to waive these rights.[46] Thus, it was recommended to the committee that A.B. 493 should include a clause stating that the anti-deficiency legislation could not be waived.

The proceedings leading up to the 1987 amendment to NRS 40.453 provide some insight into the legislature's intent. On June 10, 1987, a hearing was held before the Assembly Committee on Judiciary.[47] At the hearing, a memorandum prepared by Michael Wall of the Supreme Court of Nevada Central Legal Staff was distributed to the committee. The memo states the following:

> NRS 40.453 presently provides that it is against the public policy of this state to enforce any provision ''whereby a mortgagor or the grantor of a deed of trust waives any right secured to him by the laws of this state.'' This section is part of the anti-deficiency statutes, and the obvious intent of the legislature was to preclude lenders from requiring borrowers to waive their rights under the anti-deficiency statutes.[48]

Accordingly, we conclude that the comments solicited by the legislature during the hearing on the amendment to NRS 40.453 highlight the intent of the legislature to protect the rights created

---

[42]See *Tandy Computer Leasing v. Terina's Pizza,* 105 Nev. 841, 843, 784 P.2d 7, 8 (1989) (recognizing the enforceability of forum selection clauses under certain circumstances).

[43]See *Engel v. Ernst,* 102 Nev. 390, 395, 724 P.2d 215, 216 (1986) (recognizing the validity of choice-of-law clauses).

[44]See 1969 Nev. Stat., ch. 327, § 4, at 573.

[45]See Hearing on A.B. 297, A.B. 298, A.B. 493, A.B. 494 and A.B. 199 Before the Assembly Comm. on Judiciary, 55th Leg. (Nev., March 13, 1969).

[46]*Id.*

[47]See Hearing on S.B. 359 Before the Assembly Comm. on Judiciary, 64th Leg. (Nev., June 10, 1987).

[48]Memorandum from Michael K. Wall, Deputy Supervising Staff Attorney, Nevada Supreme Court, to Chief Justice E. M. Gunderson, Nevada Supreme Court 3 (May 26, 1987), *available at* Hearing on S.B. 359 Before the Assembly Comm. on Judiciary, 55th Leg., Ex. D (Nev., June 10, 1987).

by Nevada's anti-deficiency legislation, not to protect the right to a jury trial. This conclusion is consistent with the fact that NRS 40.453 is codified in Chapter 40 of the Nevada Revised Statutes under the subheading "Foreclosure Sales and Deficiency Judgments."[49]

Irrespective of the foregoing, real parties in interest contend that *Keever v. Nicholas Beers Co.*[50] supports the proposition that NRS 40.453 precludes waiver of the right to trial by jury. In *Keever*, this court held that a debtor could not waive his right to the one-action rule in a document relating to the sale of real property.[51] The "one-action rule" under NRS 40.430(1) provides that "there may be but one action for the recovery of any debt, or for the enforcement of any right secured by a mortgage or other lien upon real estate." Real parties in interest argue that the holding in *Keever* can be extended to preclude the waiver of the right to trial by jury.

We conclude that such extension is not warranted. Clearly, *Keever* involved the prohibited waiver of the one-action rule. Nowhere in *Keever* did we address the right to a jury trial. Accordingly, we are unpersuaded by real parties in interest's argument that the holding in *Keever* can be extended to preclude the waiver of the right to a trial by jury.

NRS 40.453 does not preclude waiver of the right to trial by jury. A review of the legislative history reveals that NRS 40.453 was enacted to protect the rights created by Nevada's anti-deficiency legislation, not to protect the right to a jury trial. Therefore, NRS 40.453 does not prohibit contractual jury trial waivers. Additionally, real parties in interest knowingly, voluntarily and intentionally waived their right to a jury trial. Accordingly, we grant the petition and direct the clerk of this court to issue a writ of mandamus instructing the district court to strike the real parties in interest's jury demand.[52]

MAUPIN, C. J., YOUNG, ROSE and BECKER, JJ., concur.

---

[49]*See A Minor v. Clark Co. Juvenile Ct. Servs.*, 87 Nev. 544, 548, 490 P.2d 1248, 1250 (1971) (holding that the title of a statute may be considered in construing the statute).

[50]96 Nev. 509, 611 P.2d 1079 (1980).

[51]*Id.* at 515-16, 611 P.2d at 1084; *see also* NRS 40.430(1) (providing the statutory basis for the one-action rule).

[52]THE HONORABLE MIRIAM SHEARING, Justice, and THE HONORABLE MYRON E. LEAVITT, Justice, voluntarily recused themselves from participation in the decision of this matter.